Carlos LICEA–GOMEZ

v.

**Alva L. PILLIOD, District Director of the Immigration and Naturalization Service of the United States Department of Justice, Chicago District, and Local Board No. 19, Selective Service System, Chicago, Illinois.**

No. 59 C 2009.

United States District Court
N. D. Illinois.

Oct. 11, 1960.

F. Raymond Marks, Jr., Marshall Patner, Chicago, Ill., for plaintiff.

R. Tieken, Chicago, Ill., E. M. Walsh, Jr., Chicago, Ill., for defendants.

JULIUS J. HOFFMAN, District Judge.

Plaintiff in this action seeks review, under Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, of an order by a Special Inquiry Officer of the Immigration and Naturalization Service, excluding him from the United States

under Section 212(a) (20) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1182(a) (20),[1] because he does not possess an immigration visa which is a prerequisite to entry. An appeal from the Officer's order was dismissed by the Board of Immigration Appeals, File: A–10864503–Chicago, December 1, 1959. Plaintiff claims he was denied due process of law because the Special Officer and the Board did not consider whether he was also excludable under Sec. 212(a) (22) of the 1952 Act, 8 U.S.C.A. § 1182(a) (22), which states:

"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\* \* \* \* \* \*

"(22) Aliens who are ineligible to citizenship, except aliens seeking to enter as nonimmigrants; or persons who have departed from or who have remained outside the United States to avoid or evade training or service in the armed forces in time of war or a period declared by the President to be a national emergency, \* \* \*"

By joining Local Draft Board No. 19 in this action plaintiff attempts to clarify his position under the immigration laws with regard to his draft record, and either have this court determine his status under Sec. 212(a) (22) of the 1952 Act, 8 U.S.C.A. § 1182(a) (22) and Sec. 315

(b) of the 1952 Act, 8 U.S.C.A. § 1426 (b)[2] or send the case back to the Inquiry Officer to make this decision. The defendants have moved to dismiss plaintiff's action for lack of jurisdiction over the subject matter, failure to join an indispensable party—a consular officer—, failure to state a cause of action upon which relief may be granted, and lack of jurisdiction over Local Draft Board No. 19.

The facts indicate that the plaintiff entered this country on a visitor's visa in 1950. Later during that year he registered with Local Draft Board No. 19, Chicago, Illinois, and then when his visa expired and without notifying the Draft Board he returned to Mexico. In 1951 plaintiff returned to the United States on a visitor's visa and married an American citizen. Thereafter, in September of 1952, plaintiff voluntarily departed from the United States, but only after having remained here for a period in excess of that allowed by his visa. It was during this visit that plaintiff claims his status was wrongfully affected because he signed a Selective Service Form 130, which provides for exemption from military service in exchange for a waiver of eligibility for citizenship under Sec. 4(a) of the Universal Military Training and Service Act of 1948, 50 U.S.C.A.Appendix, § 454(a). The circumstances surrounding his signing of this waiver and the effect of signing it are disputed between the parties. In essence, plaintiff by this action wants a determination of this issue, for until this is decided he is

1. "(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:

\* \* \* \* \*

"(20) Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, \* \* \*".

2. "(a) Notwithstanding the provisions of section 405(b) of this Act, any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

unable to receive a visa from a consular officer. The effect of signing this form is to waive eligibility for citizenship. And, under Sec. 212(a) (22) of the 1952 Act, 8 U.S.C.A. § 1182(a) (22), a visa applicant must be eligible for citizenship before such a visa can be granted.

Subsequent to departing from the United States in 1952, plaintiff applied to the consulate in Mexico City for an immigrant visa as a permanent resident. This application was denied pursuant to Sec. 212(a) (22) and Sec. 315(b) of the 1952 Act, 8 U.S.C.A. §§ 1182(a) (22), 1426(b), because his file contained the 130 Form. However, plaintiff was permitted to enter the United States in 1957 without a visa under a parole, Sec. 212 (d) (5) of the 1952 Act, 8 U.S.C.A. § 1182(d) (5) [3] pending a private bill of Congressman Boyle, H.B.No.10883, 85th Cong., 2d Sess., to have a visa issued to the plaintiff. Licea-Gomez's parole was extended until July 9, 1959 when he was notified that the Bill failed of passage. Plaintiff then applied to the Immigration and Naturalization Service for an exclusion hearing, which was held on August 31, 1959, pursuant to the 1952 Act, Secs. 235, 236, 8 U.S.C.A. §§ 1225, 1226. The Inquiry Officer did not decide plaintiff's status under Sec. 212(a) (22) of the 1952 Act, 8 U.S.C.A. § 1182(a) (22), but only determined that plaintiff was excludable since he was without proper documents under Sec. 212(a) (2) of the 1952 Act, 8 U.S.C.A. § 1182(a) (2). Licea-Gomez was without counsel at the hearing before the Officer, but counsel did make a personal appearance for him on October, 14, 1959, before the Board of Immigration Appeals. The Board, holding that the Officer properly limited the scope of the proceeding below, dismissed plaintiff's appeal. Then, plaintiff filed this action and the court issued an injunction pendente lite restraining the defendant, Alva L. Pilliod, from arresting and excluding the plaintiff.

■ It is true that plaintiff's problem resolves around his inability to obtain a visa. But, contrary to defendants' belief, he has not asked the court to issue him one. Rather, to use plaintiff's words: "the underlying purpose of plaintiff's action is to clarify his status, to avoid imminent deportation, and *to be in a position to apply* for an immigrant visa for permanent residence in the United States." Plaintiff's Memorandum p. 2. (Emphasis added.) Therefore, since no visa is here sought, a consular officer is not indispensable to this court's jurisdiction as the defendants have asserted. See Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868; Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583.

■ Until recently it was not clear whether the courts could review exclusion proceedings other than by habeas corpus. See Developments in the Law—Immigration and Nationality, 66 Harv. L.Rev. 643, 672 (1953). In Brownell v. We Shung, 1956, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225, however, the Supreme Court laid to rest these doubts and concluded that under the 1952 Act exclusion orders may be challenged either by habeas corpus or by declaratory judgment action under Sec. 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009. Thus, this court does have jurisdiction over the subject matter of this action.

■ At this juncture, it seems wise to note the difference between exclusion,

---

3. "(d) * * *

    *      *      *      *

"(5) The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."

which is now before the court, and deportation orders, and to note the effect of due process upon each of these hearings. The excluded alien is one who seeks entry into this country, while the deportable alien is one who has already entered but is subject to "expulsion." Nor does the fact that the excluded alien is paroled into the country under Sec. 212(d) (5) of the 1952 Act, 8 U.S.C.A. § 1182(d) (5), as was Licea-Gomez in this case, change his status or enlarge his rights. He is still subject to the statutes governing exclusion and has no greater claim to due process than if he was held at the border. Parole is merely a device to avoid "needless confinement." See Leng May Ma v. Barber, 1958, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246. The rights of the excluded alien, whether on parole or not, are limited, since it has been held that admission to the United States is not a right but a privilege and as a fundamental act of sovereignty is not subject to review. See United States ex rel. Knauff v. Shaughnessy, 1950, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317. While the Knauff case lays down a very strict rule, cases not involving security problems under the immigration laws, as that case did, have accorded at least a measure of due process to excluded aliens and have required a "fair hearing as well as conformity to statutory grounds." Brownell v. We Shung, 1956, 352 U.S. 180, 182 note 1, 77 S.Ct. 252, 254, 1 L.Ed. 2d 225; United States ex rel. We Shung v. Murff, D.C.S.D.N.Y.1959, 176 F.Supp. 253, 257 (citing cases). In·the case at bar, therefore, the court is limited in its review of the administrative action below and may only ascertain whether the hearings accorded plaintiff were fair and whether the proceedings followed the statutory requirements.

The plaintiff does not claim that what was done or decided at the hearing or appeal was unfair or did not follow the applicable statutory procedure. In fact, his attorney at the hearing before the Board of Immigration Appeals admitted that the exclusion order based upon plaintiff's lack of a visa was proper, and furthermore that even if plaintiff received the adjudication he desired on the issue of his eligibility for citizenship he would still have to return to Mexico and reapply for a visa. Transcript of Oral Argument Before the Board of Immigration Appeals, pp. 1, 4 (Oct. 14, 1959). It is not a review of what was decided that plaintiff wants, but rather he wants to enlarge upon the scope of the hearing to include the determination of his eligibility for citizenship. The issue before the Officer, however, was whether plaintiff could be excluded from entry, which admittedly the Officer properly decided.

The plaintiff has not brought to the court's attention any cases that support his position or that indicate that the relief he desires can be granted by the administrative hearings or this court. Contrariwise, there are cases, which while not exactly in point, do tend to the opposite conclusion. In Ntovas v. Ahrens, 7 Cir., 1960, 276 F.2d 483, the Seventh Circuit held that the plaintiff there could not substitute his own grounds for deportation over the grounds selected and relied upon by the government. A closer case in point is Application of Paktorovics, D.C.S.D.N.Y.1957, 156 F.Supp. 813. There, in a habeas corpus proceeding contesting an exclusion order, the court held, *inter alia*, that (1) revocation of a parole without a hearing was not a denial of due process, and (2) neither was an exclusion hearing limited only to the question of possession of entry documents a denial of due process. In that case, plaintiff and his family were Hungarian refugees admitted to the United States under parole after the 1956 Hungarian insurrection. The parole device was used to meet the immediate needs of these people and as a temporary measure until Congress could enact appropriate legislation on their behalf. Once in this country, Paktorovics made inconsistent statements concerning his membership in the Communist Party and thereby had his parole revoked. Exclusion proceedings and hearings followed which limited the relevant issue to whether Paktorovics had a valid

visa, as was done to Licea-Gomez in the case now before the court. The court in Paktorovics held that "the validity of the parole revocation order, therefore, was properly held outside the scope of the exclusion hearings." 156 F.Supp. at page 818. That case is very similar to the one at bar, since in both cases it is the initial action leading to the exclusion proceedings that is in issue and upon which the plaintiffs seek adjudication. In Paktorovics, that adjudication was held to be beyond the scope of the exclusion hearings.

On appeal, the Paktorovics case was reversed. United States ex rel. Paktorovics v. Murff, 2 Cir., 1958, 260 F.2d 610. However, the reversal was based upon plaintiff's first claim, that revocation of his parole without a hearing was a denial of due process. Judge Medina held that Paktorovics' parole was *sui generis* and that his entry into this country as a Hungarian refugee came as the result of an invitation to him pursuant to the announced foreign policy of the United States. This entry, therefore, carried with it greater rights than an ordinary parole. This reversal, however, does not alter the District Court's reasoning on Paktorovics' second claim concerning the scope of the exclusion hearings. Moreover, Licea-Gomez's present position can be readily distinguished from that of Paktorovics. Licea-Gomez entered this country conditionally, upon the passage of Congressman Boyle's private bill on his behalf, while Paktorovics entered this country under offer of asylum of the President. Under the circumstances, Licea-Gomez had no reason to believe that if his private bill failed he would have any greater rights than he did prior to his parole; whereas Paktorovics, according to Judge Medina, did have greater assurance from the government that he would receive constitutional protection and be entitled to a hearing before his parole could be revoked.

■■ Nor can the plaintiff find any comfort in the declaratory relief cases.

The cases have held that before such a process can be invoked the plaintiff's status must be directly controverted. Therefore, the courts have permitted such suits where citizenship is in issue, Perkins v. Elg, 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320, or where eligibility for citizenship is in issue and is also a prerequisite to the relief sought, McGrath v. Kristensen, 1950, 340 U.S. 162, 71 S.Ct. 224, 95 L.Ed. 173. Neither of the above situations is before the court now. At first blush the Kristensen case seems similar, but in that case a determination of Kristensen's eligibility was necessary before the Attorney General could exercise his discretion under Sec. 19(c) of the Immigration and Nationality Act of 1917.[4] Licea-Gomez's eligibility for citizenship, though in issue, need not be adjudicated in this action and has no effect upon his exclusion. On the other hand, Kristensen's eligibility was directly in issue since it was a prerequisite to the Attorney General suspending his deportation. No similar suspension statute is applicable to Licea-Gomez. Moreover, while the Supreme Court has recently held that declaratory relief is appropriate in exclusion cases, the Court expressly stated that this did not change or add to the substantive law surrounding this type of action. Brownell v. We Shung, 1956, 352 U.S. 180, 183–184, 77 S.Ct. 252, 1 L.Ed.2d 225. Therefore, since plaintiff's eligibility for citizenship is not directly in issue or germane to the exclusion hearings, the court is unable to make the determination plaintiff desires. Furthermore, making such an adjudication would be going beyond the constitutional grant of jurisdiction to the federal courts to decide only cases or controversies. For a controversy to exist, the court must be able to grant specific relief. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 1937, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617 (citing cases). This is impossible in the case now before this court, since granting the plaintiff a determination of his eligibility for

4. Now 8 U.S.C.A. § 1254(a) (1, 2).

citizenship would admittedly not affect his exclusion.

 In effect, the thrust of plaintiff's claim of lack of due process, alluded to in his memorandum, p. 4, relates to his lack of a forum to determine his eligibility for citizenship. While it is true that the lawfully admitted alien has been able to litigate the effects of signing a Form 130 waiver in naturalization or deportation proceedings before the courts, e. g., Ceballos v. Shaughnessy, 1957, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583 (deportation); Application of Mirzoeff, 2 Cir., 1958, 253 F.2d 671 (naturalization); Petition of Meng Chung Yang, D.C.D.C. 1959, 171 F.Supp. 898 (naturalization); Congress has not seen fit to grant any review whatsoever to one who has been refused a visa by a consul on the same grounds. Indeed, if somehow plaintiff got past this initial plateau, armed with a visa he could, if necessary, get an administrative and judicial declaration of his status. See Savoretti v. Small, 5 Cir., 1957, 244 F.2d 292, 295; Rosenfield, Consular Non-Reviewability: A Case Study in Administrative Absolutism, 41 A.B.A.J. 1109, 1111 (1955). But, under present law a consul's decision to withhold a visa is not reviewable, not even by the Secretary of State. Act of 1952, §§ 104(a), 221, 8 U.S.C.A. §§ 1104(a), 1201; United States ex rel. Ulrich v. Kellogg, 1929, 58 App.D.C. 360, 30 F.2d 984, 71 A.L.R. 1210, certiorari denied United States ex rel. Ulrich v. Stimson, 279 U.S. 868, 49 S.Ct. 482, 73 L.Ed. 1005. This is what Congress has provided, and it has been repeatedly held that whatever Congress does provide in the case of excluded aliens is due process. See, e. g., United States ex rel. Knauff v. Shaughnessy, 1949, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317.

To allow plaintiff a hearing and adjudication on his eligibility for citizenship would completely circumvent the provisions of the Immigration and Nationality Act of 1952 granting exclusively to consuls the right to issue visas. Such a hearing would mean that everyone denied a visa by a consul could present himself at the border without a visa and get an adjudication on his status under any of the various exclusionary provisions of Sec. 212 of the 1952 Act, 8 U.S.C.A. § 1182. Then after such declaration, if favorable, he could reapply to the consul. This is certainly not what Congress intended in the statute, and the court cannot here undermine the statutory scheme and allow plaintiff by this proceeding to review the consul's action. While Congress has been severely criticized for its position in this matter, see Rosenfield supra; Developments in the Law—Immigration and Nationality, 66 Harv.L.Rev. 643, 662 (1953), it is up to that body to remedy it and not this court.

The motion of the defendants to dismiss the plaintiff's amended complaint will be granted.