**UNITED STATES of America ex rel. LAM FO SANG, Relator,**

v.

**P. A. ESPERDY, as District Director of the Immigration Service for the District of New York, or such person, if any, who may have the said Lam Fo Sang in custody, Respondent.**

United States District Court
S. D. New York.
Nov. 28, 1962.

Abraham Lebenkoff, New York City, for relator.

Vincent L. Broderick, U. S. Atty., for Southern Dist. of New York, for respondent, Roy Babitt, Sp. Asst. U. S. Atty., of counsel.

DAWSON, District Judge.

This is a motion for a writ of habeas corpus directing the production of the relator, Lam Fo Sang, for a hearing before a Special Inquiry Officer of the Immigration Service. Such hearing would be for the purpose of determining whether the relator should be deported from the United States.

The facts are not in dispute. The relator is a native and citizen of China. He arrived at Honolulu, Hawaii, on August 11, 1962 aboard an airplane that had transported him from Hong Kong. Relator, whose final destination was Panama, continued on the aircraft to San Francisco, California, where he changed planes and flew to New York City, arriving on August 12, 1962. Relator had no visa entitling him to enter the United States. He was allowed to land at the airport in New York as a TRWOV (Transit Without Visa). While waiting for the flight that was to take him to Panama, relator illegally left Idlewild Airport and proceeded to New York's Chinatown. From there he went to Long Island where he obtained employment as a waiter in a Chinese restaurant. It was here that relator was apprehended by investigators of the Immigration Service on October 24, 1962.

He has been in the custody of the Service from that date forward.

 The immigration laws make a distinction between aliens seeking admission and those aliens already in the United States. Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed. 2d 1246 (1958); Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S. Ct. 625, 97 L.Ed. 956 (1953); Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953). Those seeking admission are subject to exclusion; those already in the country are subject to expulsion. The rights of each class of aliens are separately dealt with by Congress. Title 8, U.S.C. §§ 1221–1230 are concerned with exclusion, while 8 U.S.C. §§ 1251–1260 are concerned with expulsion.

If an alien is being expelled from the United States he is entitled to a hearing as set forth in 8 U.S.C. § 1252(b).[1] An alien being denied entry and therefore excluded is afforded a hearing of more limited scope by 8 U.S.C. § 1226(a).[2]

In fact, a hearing may be denied altogether to an excluded alien if the security of the United States is involved. 8 U.S.C. § 1225(c).[3]

It is the contention of the Immigration Service that the relator is being excluded and not expelled. The Service further contends that the relator is not even entitled to the limited hearing provided for by 8 U.S.C. § 1226(a) because he is a member of a special class of excluded aliens, i. e., a TRWOV, to whom a hearing is denied.

The relator, as has been stated, is one of a class of aliens known as Transits Without Visas (TRWOV). His right to land at an airport within the country, even for the limited purpose of boarding another flight almost immediately, is based upon statute and regulation. It is the Immigration Service's position that the authority which creates the right to land denies at the very same time any right to a hearing. Should this writ of habeas corpus be denied, the relator will be returned to the airline that brought

1. "A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation. * * * Proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, not inconsistent with this chapter, as the Attorney General shall prescribe. Such regulations shall include requirements that—

 (1) the alien shall be given notice, reasonable under all the circumstances, of the nature of the charges against him and of the time and place at which the proceedings will be held;

 (2) the alien shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose;

 (3) the alien shall have a reasonable opportunity to examine the evidence against him, to present evidence in his own behalf, and to cross-examine witnesses presented by the Government; and

 (4) no decision of deportability shall be valid unless it is based upon reasonable, substantial, and probative evidence. * * *" 8 U.S.C. § 1252(b).

2. "A special inquiry officer shall conduct proceedings under this section, administer oaths, present and receive evidence, and interrogate, examine, and cross-examine the alien or witnesses. * * * At such inquiry, which shall be kept separate and apart from the public, the alien may have one friend or relative present, under such conditions as may be prescribed by the Attorney General. * * *" 8 U.S.C. § 1226(a).

3. " * * * If the Attorney General is satisfied that the alien is excludable under any of such paragraphs on the basis of information of a confidential nature, the disclosure of which the Attorney General, in the exercise of his discretion, and after consultation with the appropriate security agencies of the Government, concludes would be prejudicial to the public interest, safety, or security, he may in his discretion order such alien to be excluded and deported without any inquiry or further inquiry by a special inquiry officer. * * *" 8 U.S.C. § 1225 (c).

him and taken by it either to his original destination or to the place from where he came.

The justification for the summary proceeding by the Immigration Service is based upon its interpretation of the applicable statutes and regulations. Essentially it points to a section of law that requires a passport and a visa as a condition of admission to the United States. A companion section allows the Attorney General and the Secretary of State to waive these requirements for TRWOVs. Finally, there is an administrative regulation that sets forth the basis upon which the Attorney General and the Secretary of State will exercise the waiver. It is the regulation that denies a hearing to a TRWOV.

Title 8 U.S.C. § 1182(a) states that:

"Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States: * * * (26) Any non immigrant who is not in possession of (A) a passport valid for a minimum period of six months from the date of the expiration of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed to and enter some other country during such period; and (B) at the time of application for admission a valid non immigrant visa or border crossing identification card * *."

Subsection (d) (4) of § 1182 provides an exception to the above requirements for TRWOVs:

"Either or both of the requirements of paragraph (26) of subsection (a) of this section may be waived by the Attorney General and the Secretary of State acting jointly * * * (C) in the case of aliens proceeding in immediate and continuous transit through the United States * * *."

The waiver by the Attorney General and the Secretary of State is dis-

cretionary. As a matter of policy it is not given unless the TRWOV agrees to comply with 8 C.F.R. § 214.2 (c) (1):

"(c) Transits—(1) Without visas. Any alien, except a citizen and resident of * * * Communist-controlled China ('Chinese People's Republic') * * * applying for immediate and continuous transit through the United States, must establish that he is admissible; that he has confirmed and onward reservations to at least the next country beyond the United States * * * and that he had a document establishing his ability to enter some country other than the United States * * * The acceptance of the transit privilege constitutes an agreement by the alien and the carrier that he will depart voluntarily from the United States without recourse to any hearing or proceeding provided for in this chapter and that at all times he is not aboard an aircraft which is in flight through the United States he shall be in the custody directed by the district director, provided that if admissibility is established only after exercise of the discretion contained in section 212(d) (3) (B) of the Act the alien shall be in the custody of the Service at carrier expense and must depart on the earliest and most direct foreign-destined plane or vessel."

The sections set out above form a definite and intelligible pattern. The usual procedure for an entering alien is to require that he possess certain documents. These would include both a passport and a visa. A rigid adherence to this requirement would create unnecessary hardship. Many cities within the United States are important airline terminals. Passengers from foreign countries who do not intend to remain in the United States often find that the most convenient route to their destination contains a change of flights at an airport in the United States. Such a route would be difficult if not impossible if all

such aliens were required to have passports and visas.

Congress delegated to the Attorney General and the Secretary of State the power to make an exception for TRWOVs. The terms and conditions upon which the requirements would be waived were also left to executive determination. They are contained in 8 C.F.R. § 214.2(c) (1).

The position of the Immigration Service is that the waiver of the hearing by the TRWOV is the price he must pay for a counter waiver by the Attorney General and the Secretary of State. Unless this counter waiver were forthcoming the relator would have had to possess documents that he did not and does not have. 8 U.S.C. § 1182(a) (26).

■ The questions this Court must now answer are (1) is the relator subject to exclusion or must he be expelled, and (2) does 8 C.F.R. § 214.2(c) (1) deprive the relator of the hearing required by either 8 U.S.C. § 1226(a) or § 1252(b) ?

Exclusion usually refers to a situation in which the alien has not entered our shores. Being a word of art and subject to judicial interpretation, it has however, in certain instances, been construed to refer to situations in which the alien was physically within the United States.

In United States v. Murff, D.C., 176 F.Supp. 253 (S.D.N.Y.1959) this court denied a writ of habeas corpus to Tom We Shung who was seeking to establish his right to remain in the United States. The relator's position was that he was the son of Tom Wing, an American citizen who was an honorably discharged veteran of World War II. Shung had originally advanced this contention in 1947 to a Board of Special Inquiry which decided that he had not proved his kinship with Tom Wing. Relator fought this determination through the Immigration Service and the courts for over eleven years. Judge Weinfeld said:

> "Shung, in contemplation of law, has never been in the United States. The fact that since September 1948

he has been at large on bond under an administrative order and for eleven years enjoyed what has euphemistically been referred to as a 'temporary haven' within the United States while he litigated his claim for admission, did not alter his status as an excluded alien. However one may view the fiction, he is still, in theory of law, 'on the threshold of initial entry'. * * *" D.C., 176 F.Supp. 253, at p. 256. See Licea-Gomex v. Pilliod, 193 F.Supp. 577 (N.D.Ill.1960).

That case is clearly distinguishable from the instant one. In Murff, supra, the relator was at large on bond and in contemplation of law within the custody of an administrative body. In the instant case relator escaped from custody and became part of the population. While at the airport and in the custody of the airline or the Immigration Service, relator was in an analogous position to the relator in Murff, supra, and had not effected an entry. However, due to the carelessness, inefficiency or neglect of the Immigration Service, relator managed to pass the Immigration barrier at the airport and get into the United States. Thereupon his status was no different from that of a seaman who had jumped ship or a "wetback" who entered the United States by swimming the Rio Grande.

■ The right to a deportation hearing is not curtailed by the illegality of the initial entry into the United States. This may well be the basis for eventual expulsion but the right to a hearing remains. Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953). The relator herein by his escape from the Immigration Service became an alien within the United States subject to being expelled by a deportation hearing called for in 8 U.S.C. § 1252(b).

The second question for the Court is whether 8 C.F.R. § 214.2(c) (1) purports to be and is effective as a denial to an alien of a hearing that he would otherwise be entitled to.

8 C.F.R. § 214.2(c) (1) only relates to the TRWOV while he remains in custody. It denies a section 1226(a) hearing normally available to excluded aliens. Once the relator escaped and effected an entry into the United States he ceased to be governed by that regulation. Persons within the United States cannot be expelled without a hearing. 8 U.S.C. § 1252(b). Regardless of congressional intent, the Attorney General, by promulgating 8 C.F.R. § 214.2(c) (1), has not sought to deny a hearing to those aliens who escape from custody. The regulation applies to those who remain within the custody of the airline or the Immigration Service.

The writ of habeas corpus is granted and the Immigration Service is directed to produce the relator before a Special Inquiry Officer for a deportation hearing required by 8 U.S.C. § 1252(b).