UNITED STATES of America ex rel. LAM HAI CHEUNG, Relator-Appellant,

v.

P. A. ESPERDY, as District Director of the Immigration and Naturalization Service of the United States, Department of Justice, for the District of New York, or such person, if any, who might have said relator in custody, Respondent-Appellee.

No. 278, Docket 29276.

United States Court of Appeals
Second Circuit.

Argued Jan. 6, 1965.

Decided May 27, 1965.

Spar, Schlem & Burroughs, New York City, for relator-appellant, Max K. Schlem, New York City, of counsel.

James G. Greilsheimer, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., Roy Babitt, Sp. Asst. U. S. Atty.), for respondent-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Appellant petitioned the United States District Court for the Southern District of New York for the issuance of a writ of habeas corpus alleging that he was unlawfully restrained of his liberty by the respondent, the District Director of the Immigration and Naturalization Service.

The facts are undisputed. The relator is a Chinese native and citizen. He was a bona fide crewman on the Norwegian vessel, the T/S Kingsville, when his vessel docked at Norfolk, Virginia, on December 14, 1963. As the inspecting immigration officer was satisfied that Cheung intended to depart Norfolk when his vessel departed, Cheung was issued a crewman's conditional landing permit which granted him the privilege of shore leave for the period of time, not exceeding twenty-nine days, that his vessel was at Norfolk or in any other United States port.[1]

He departed Norfolk on his vessel, and on December 23 at Wilmington, North Carolina, Cheung became ill. He was examined there by a doctor called by the

1. 8 U.S.C. § 1282(a).

shipping company, but continued on with the vessel to Jacksonville, Florida. There on December 26, a doctor informed the shipping company that the crewman's X-rays suggested that he was afflicted with active tuberculosis, and, as the vessel was leaving that very day for the West Coast via the Panama Canal, the company requested authority to disembark Cheung for further medical treatment which the examining physician recommended be undergone at the Norwegian Health Center in New York City.

As it was obvious that if Cheung were to receive medical treatment in New York City he could not depart Jacksonville on his vessel, the Jacksonville I. N. S. officers, satisfied of that, revoked the conditional landing permit granted Cheung at Norfolk and ordered, pursuant to 8 U.S.C. § 1182(d)(5)[2] and the applicable regulations, 8 CFR § 253.1(b) and § 253.1(d), that he be paroled into the United States for medical treatment. The parole was limited to a period of thirty days ending January 26, 1964.

When Cheung arrived in New York City, he was given tests at the Health Center and was then lodged in a seaman's home. After visiting the Health Center the following day, Cheung failed to return to the seaman's home and disappeared for nine months. (He says he was lost.) On September 29, 1964, he was located by the I. N. S. in New York City, his medical parole was "revoked," and he was taken into government custody.

The I. N. S. informed Cheung's employer that relator was to be removed from the country, and the steamship company agreed to ship him home. When steps were taken to transfer him to the custody of the company, however, Cheung petitioned for a writ of habeas corpus. After a hearing on the petition, Judge Cooper dismissed the writ without an opinion. We affirm the order of the district court.

[■] Cheung argues that his conditional landing permit was improperly revoked on December 27, 1963, because the I. N. S. had no evidence, as required by 8 U.S.C. § 1282(b), that he was "not a bona fide crewman" or that he "[did] not intend to depart on the vessel * * * which brought him." Even if the landing permit was not validly revoked, however, it would have expired automatically no later than January 12, 1964, and for the next two weeks, until January 26, Cheung would have enjoyed the status of a medical parolee. Thus whether the landing permit expired by virtue of the 29 day limitation or was revoked when Cheung was ordered paroled for medical treatment, Cheung is now in this country as one who has overstayed his temporary parole.

[■] Cheung also argues that he cannot be expelled from the country without a hearing pursuant to 8 U.S.C. § 1252(b). However, our court has already ruled that a temporary parolee is not entitled to a hearing on the revocation of his parole precedent to his expulsion from the country. Wong Hing Fun v. Esperdy, 335 F.2d 656 (2 Cir. 1964), cert. denied, Ng Sui Sang v. Esperdy, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965). Accord, Ahrens v. Rojas, 292 F.2d 406, 408–10 (5 Cir.1961). We hold that a person whose temporary parole has automatically expired stands no better in this respect.

Affirmed.

---

**2.** 8 U.S.C. § 1182(d) (5) reads:

"The Attorney General may in his discretion parole into the United States temporarily under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."