UNITED STATES of America ex rel.
Tomislav KORDIC and Venka
Kordic, Relators,

v.

P. A. ESPERDY, as District Director of the Immigration and Naturalization Service for the District of New York, or such other person, if any, who may have said relators in custody, Respondent.

No. 67 Civ. 3286.

United States District Court
S. D. New York.

Sept. 12, 1967.

Edward Q. Carr, New York City, for relators; Robert L. Feldt, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, for respondent; Francis J. Lyons, Sp. Asst. U. S. Atty., of counsel.

OPINION

McLEAN, District Judge.

Relators seek by habeas corpus to review a decision of the District Director of the Immigration and Naturalization Service which directed that they be deported to Yugoslavia. Relators, who are husband and wife, were members of the crew of the Yugoslav vessel Goranka, which arrived in Portland, Oregon, on June 22, 1967. They were allowed to go ashore temporarily under so-called D–1 Conditional Landing Permits. They de-

serted the vessel and proceeded to New York where on June 29, 1967, they were apprehended by immigration officers at the residence of Venka Kordic's brother, Srecko Olic. The Service thereupon revoked their conditional landing permits pursuant to 8 U.S.C. § 1282(b) and 8 C.F.R. § 252.2. The Goranka was still in a United States port at that time, scheduled to sail on July 7, 1967.

Before they could be returned to the vessel, relators, who were and are represented by an attorney, applied to the District Director to withhold their deportation pursuant to 8 U.S.C. § 1253(h) on the ground that if they were returned to Yugoslavia they would be persecuted because of their political opinions. An immigration inspector interviewed them on July 6 and July 7, 1967. The District Director concluded that they had made "no showing of persecution," and directed that they be returned to the ship.

Relators then applied to this court for a writ of habeas corpus. In the meantime the Goranka sailed without them. Judge Bonsal held that the Service should grant relators a further interview and an opportunity to call witnesses and to offer evidence in support of their claim of persecution. He denied the applications for a writ, without prejudice to their later renewal.

Thereupon, in accordance with Judge Bonsal's decision, a further interview was held on August 8 before an immigration inspector. Both relators testified. They also called as witnesses relator Venka Kordic's two brothers, Srecko Olic and Tomislav Olic. At the conclusion of this interview, relators' attorney requested an adjournment in order to enable him to produce an "expert witness." The adjournment was granted until August 15.

On August 11 relators' attorney applied to an attorney for the Immigration Service, who had succeeded the immigration inspector as the examining officer, for a further adjournment in order to produce such a witness. An adjournment was granted until August 17. On August 17 no such witness appeared and the re-quest of relators' attorney for an additional adjournment was denied.

The District Director made his decision rejecting relators' application on August 23, whereupon relators obtained from me a writ of habeas corpus returnable on August 29, 1967. I held argument on that day and further additional argument at my request on September 6 at which time I requested and obtained from the Service its files pertaining to the brothers Srecko Olic and Tomislav Olic.

Relators urge that they were entitled to a quasi-judicial hearing before a Special Inquiry Officer, rather than to a mere interview by an official designated by the District Director. Judge Bonsal rejected this same contention upon relators' previous habeas corpus application. Nevertheless, I have examined it anew.

The usual alien whom the government seeks to deport has a statutory right to a hearing. 8 U.S.C. § 1252(b). Such a hearing is conducted before a Special Inquiry Officer who passes, among other things, upon a request of the alien that his deportation be delayed because of possible persecution in the country to which he is to be sent. 8 C.F.R. § 242.17 (c).

But an alien crewman who has deserted his vessel and whose landing permit has been revoked prior to the vessel's departure is a special case. He is not entitled to a formal deportation hearing. He may be summarily returned to his vessel. 8 U.S.C. § 1282(b). In 1960 Judge MacMahon held in United States ex rel. Szlajmer v. Esperdy, 188 F.Supp. 491 (S.D.N.Y.1960), that despite this section, such a crewman is entitled to a hearing before a Special Inquiry Officer with respect to his claim of persecution. Judge MacMahon reasoned that the crewman had a statutory right under 8 U.S.C. § 1253(h) to a determination of his claim. The only procedure then provided in the regulations by which such a determination could be obtained was a hearing before a Special Inquiry Officer.

Hence the court held that the crewman should be afforded such a hearing.

Since that decision, a new regulation has been promulgated, 8 C.F.R. § 253.1 (e). It provides in pertinent part:

"Any alien crewman * * * whose conditional landing permit issued under § 252.1(d) (1) of this chapter is revoked who alleges that he cannot return to a Communist * * * country because of fear of persecution in that country on account of * * * political opinion may be paroled into the United States under the provisions of section 212(d) (5) of the Act for the period of time and under the conditions set by the district director having jurisdiction over the area where the alien crewman is located."

This regulation seems to have been drawn to fit the present situation. It applies to an alien crewman (1) whose conditional landing permit has been revoked prior to the departure of his vessel and (2) who seeks a determination of his claim of persecution. Respondent contends that this regulation means that such an alien crewman is not entitled to a hearing before a Special Inquiry Officer, but only to an "interview" by the District Director or his representative. The District Director has so interpreted the regulation in practice.

Section 253.1(e) does not expressly say this in so many words. But since it empowers the District Director to set the conditions under which the crewman, in a proper case, may be "paroled into the United States" (the practical equivalent of staying his deportation), it can fairly be implied that the decision on the merits of the alien's application is to be made by the District Director, not by a Special Inquiry Officer. The existence of this new regulation, therefore, provides a basis upon which United States ex rel. Szlajmer v. Esperdy, supra, can be distinguished. That decision appears no longer to be applicable.

This, in my opinion, is a sensible result. I see no reason why an alien crewman in this particular category, to whom a full-dress deportation hearing is denied by statute, should be entitled to such a hearing in the single instance in which he seeks a discretionary stay of deportation because of possible persecution. Moreover, the interview granted to relators in this case, under the terms laid down by Judge Bonsal, afforded them the same opportunity to call and examine witnesses as they would have had in a hearing before a Special Inquiry Officer. Finally, they have the right to review the merits of the District Director's decision, as they are now doing by the present application. As a practical matter, therefore, the title of the officer who conducts the proceedings, and the label to be attached to it, i. e., whether a "hearing" or an "interview," makes no real difference. Consequently, I will follow Judge Bonsal's decision.*

The more important question raised by relators is whether the District Director's decision denying their claim of persecution was an abuse of discretion, in the light of the evidence adduced at the interviews. This question has given me concern, for as far as one can ever judge credibility from a written record of testimony, I am not persuaded that had I been the District Director, I would have found that relators were acting in bad faith, as the District Director appears to have believed. The fact remains, however, that relators' evidence of persecution was not so strong that it can be said that the District Director acted arbitrarily in refusing to uphold their claim.

As far as Tomislav Kordic is concerned, the "reproaches" to which he says he was subjected, and the alleged threats of his captain to "put him ashore" upon his return, all because of his refusal to join the Communist Party, do not in themselves necessarily lead to the conclusion that he will be persecuted. Apparently

---

* Judge Bonsal also held that the Administrative Procedure Act does not require a hearing before a Special Inquiry Officer. I will follow that ruling also.

**4**

until now, Tomislav Kordic has managed to lead a reasonably normal life in Yugoslavia without hindrance by the authorities there.

Venka Kordic's only "persecution" to date, taking her testimony at face value, was her discharge from employment on one occasion. But she later obtained employment on the Goranka even though apparently there was no real need for her services. It would appear, therefore, that thus far, she has not suffered unduly at the hands of her country's government.

Venka Kordic has three brothers, each of whom has left Yugoslavia illegally. One went to Australia and two, Srecko Olic and Tomislav Olic, came to the United States under circumstances hereinafter mentioned. Relators say that they fear that if they are now returned to Yugoslavia, the Yugoslav authorities, already annoyed because of the brothers' defection, will take revenge upon Venka and her husband, particularly in view of the fact that they too have now attempted to defect. Such fears are understandable and, unlike the District Director, I am prepared to say that they are genuine. I cannot say with certainty that they are not justified, but on the other hand, I cannot say with certainty that they are. As far as appears, all that happened to Venka's father and mother when her brothers fled was detention for two or three days, plus the fact that her father was "transferred to a lower kind of work." Tomislav Olic says that he was detained for one month when his brother went to Australia, and that when he himself, on a previous occasion, was caught in an unsuccessful attempt to flee, he was imprisoned under poor conditions for 53 days. Neither sentence seems to me so severe as to amount to persecution.

My examination of the immigration files of Srecko and Tomislav Olic reveals nothing which detracts from this conclusion. Tomislav Olic also deserted a Yugoslav vessel, was finally apprehended after several years in this country, and is now involved in deportation proceedings which are still pending. Although he has also applied for a stay of deportation on the ground of persecution, his file contains no evidence on the subject.

Srecko Olic applied to the Service in Paris in 1960 for classification as a refugee-escapee under the Act of July 14, 1960, 74 Stat. 504. His application was granted, he was permitted to enter the United States, and eventually was naturalized on June 27, 1967. His file contains no evidence of persecution.

 After a careful review of the files, I am unable to say that the decision of the District Director was an abuse of discretion. Accordingly, the writ is dismissed.

Deportation of relators will be stayed until September 19, 1967, in order to afford them an opportunity to apply to the Court of Appeals for a further stay pending appeal from this order.

So ordered.