UNITED STATES ex rel. Tomislav
KORDIC and Venka Kordic,
Appellants,

v.

P. A. ESPERDY, as District Director of
the Immigration and Naturalization
Service, Appellee.

No. 150, Docket 31722.

 States Court of Appeals
Second Circuit.

Argued Sept. 22, 1967.

Decided Nov. 8, 1967.

Leon Polsky, New York City (Edward Q. Carr, Jr., Legal Aid Society, Robert L. Feldt, New York City, on the brief), for appellants.

Francis J. Lyons, Sp. Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, Daniel Riesel, Sp. Asst. U. S. Atty., on the brief), for appellee.

Before: WATERMAN, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Tomislav Kordic and Venka Kordic, husband and wife, appeal from an order of the United States District Court for the Southern District of New York, Edward C. McLean, J., dismissing a writ

of habeas corpus. 276 F.Supp. 1 (S.D. N.Y.1967). Appellants contend that they were denied a proper administrative hearing on their claim under 8 U.S.C. § 1253(h) that they would be subject to political persecution if returned to Yugoslavia. They also argue that the district court adopted an improper standard in reviewing the decision of the District Director denying them relief. For the reasons given below, we affirm.

Appellants were members of the crew of the Yugoslav vessel M/V Goranka, which arrived in Portland, Oregon on June 22, 1967. They each received a so-called D-1 conditional landing permit, which grants shore privileges for no more than twenty-nine days, but only while the vessel is in a United States port and if the crewman's passport is surrendered for safekeeping to the master of the vessel. See 1 Gordon & Rosenfield, Immigration Law and Procedure § 6.2c at 6–17 (rev.ed.1966). The conditional landing permits were issued under 8 U.S.C. § 1282(a) (1), which provides:

> (a) No alien crewman shall be permitted to land temporarily in the United States except as provided in this section * * *. If an immigration officer finds upon examination that an alien crewman is a nonimmigrant * * * and is otherwise admissible and has agreed to accept such permit, he may, in his discretion, grant the crewman a conditional permit to land temporarily pursuant to regulations prescribed by the Attorney General, subject to revocation in subsequent proceedings as provided in subsection (b) of this section, and for a period of time, in any event, not to exceed ——

> (1) the period of time (not exceeding twenty-nine days) during which the vessel * * * on which he arrived remains in port, if the immigration officer is satisfied that the crewman intends to depart on the vessel * * * on which he arrived.

The permit required appellants to depart with the Goranka from Portland; it also allowed them to rejoin the vessel at another United States port if they had "advance written permission from the master * * * to do so." 8 C.F.R. § 252.1 (d). Without such permission, appellants immediately flew from Portland to New York City, deserting their ship. They were located on June 29, 1967, and on that date their permits were revoked under 8 U.S.C. § 1282(b), which provides:

> (b) Pursuant to regulations prescribed by the Attorney General, any immigration officer may, in his discretion, if he determines that an alien is not a bona fide crewman, or does not intend to depart on the vessel * * * which brought him, revoke the conditional permit to land which was granted such crewman under the provisions of subsection (a)(1) of this section, take such crewman into custody, and require the master or commanding officer of the vessel * * * on which the crewman arrived to receive and detain him on board such vessel * * *, if practicable, and such crewman shall be deported from the United States at the expense of the transportation line which brought him to the United States. Until such alien is so deported, any expenses of his detention shall be borne by such transportation company. Nothing in this section shall be construed to require the procedure prescribed in section 1252 of this title to cases falling within the provisions of this subsection.

At the time appellants were apprehended, the Goranka was still in a United States port, and was scheduled to sail about July 7, 1967.

Before appellants were returned to the vessel under the statutory procedure set forth above, they applied to the District Director to withhold their deportation under 8 U.S.C. § 1253(h). That section provides:

> (h) The Attorney General is authorized to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to persecution

on account of race, religion, or political opinion and for such period of time as he deems to be necessary for such reason.

A Supervisory Immigrant Inspector interviewed appellants early in July 1967. The District Director concluded that no showing of "persecution" had been made and directed that they be returned to the vessel. Appellants applied to the District Court for the Southern District of New York for a writ of habeas corpus; meanwhile the Goranka sailed without them. On July 25, Judge Bonsal ordered the District Director to grant appellants further interviews, with their attorney present, and an opportunity to call witnesses and offer evidence in support of their claim of persecution. However, he denied the writ, without prejudice to later renewal. 274 F.Supp. 873 (S.D. N.Y.1967). Thereafter, there were further interviews before the same inspector and a Trial Attorney of the Immigration and Naturalization Service; at these, appellants and two brothers of Mrs. Kordic testified. On August 23, the District Director rejected appellants' claim for the second time. Appellants again sought a writ of habeas corpus; on September 12, Judge McLean dismissed the writ, and this appeal followed.

## I

Appellants first argue that they were entitled to a hearing before a special inquiry officer of the Service—which for want of a better term we hereafter call a "formal" hearing—rather than before other Service officials. They assert that "with only one exception"— crewmen covered by 8 U.S.C. § 1282(b) whose ships are still in port—all aliens legally within the United States have a statutory right to a hearing before a special inquiry officer on a claim of political persecution when the Government seeks to deport them. 8 U.S.C. § 1252(b); 8 C.F.R. § 242.17(c). Appellants argue that the exception is improper. The hearing appellants did receive

was pursuant to 8 C.F.R. § 253.1(e), which provides:

*Crewman alleging persecution.* Any alien crewman denied a conditional landing permit or whose conditional landing permit issued under § 252.1(d) (1) of this chapter is revoked who alleges that he cannot return to a Communist, Communist-dominated, or Communist-occupied country because of fear of persecution in that country on account of race, religion, or political opinion may be paroled into the United States under the provisions of section 212(d) (5) of the Act [8 U.S.C. § 1182(d) (5)] for the period of time and under the conditions set by the district director having jurisdiction over the area where the alien crewman is located.

The hearing was by no means perfunctory or unfair, as we hold in a later part of this opinion. But if appellants are correct in their first assertion, it was improper nonetheless because it was not before a special inquiry officer.

At this point it may be helpful to consider the effect of the immigration laws generally upon alien crewmen. Originally, these laws did not apply to seamen, but Congress found that many aliens were using the guise of this occupation to obtain unlawful entry. Accordingly, regulation of this group began half a century ago. 1 Gordon & Rosenfield, Immigration Law and Procedure § 6.1 (rev.ed.1966). Before passage of the 1952 Immigration and Nationality Act, the Senate Judiciary Committee recommended stringent controls designed to keep temporary stays of foreign seamen in United States ports from becoming permanent.[1] 8 U.S.C. § 1282 was enacted in response thereto. As that statutory language makes clear, generally speaking, no alien crewman is allowed to land even temporarily in the United States without the permission of an immigration officer. However, there are other ways for an alien seaman to effect initial physical entry. For example, under 8 U.S.C. § 1182(d) (5), the Attor-

---

1. S.Rep. No. 1515, 81st Cong., 2d Sess. 550, 554–558 (1950).

ney General may "parole" any alien—including a crew member—into the United States "for emergent reasons or for reasons deemed strictly in the public interest." An obvious reason would be for medical treatment, as was the case in United States ex rel. Lam Hai Cheung v. Esperdy, 345 F.2d 989 (2d Cir. 1965). Finally, of course, a seaman's initial entry into the country may be completely illegal, such as by jumping ship and swimming ashore.

In some of these situations, well-established doctrines have evolved. A "parolee," even though physically in the country, is not regarded as having "entered" and thus has not acquired the full protection of the Constitution. If he is required to leave the United States, he is being excluded, not expelled. Thus, when a "paroled" alien alleged the threat of political persecution, the Supreme Court held that she was not even entitled to make a claim under 8 U.S.C. § 1253(h), since she was not "within the United States" as required by that section. Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958). Conversely, an alien whose initial physical presence here was illegal, but whose presence is recognized as an "entry" in law, is said to be subject to expulsion, not exclusion. He is entitled to "additional rights and privileges not extended to those in the former category who are 'merely on the threshold of initial entry.'" Id. at 187, 78 S.Ct. at 1073. See also Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953); United States ex rel. Lam Fo Sang v. Esperdy, 210 F.Supp. 786, 790 (S.D.N.Y. 1962). These distinctions have been severely criticized, see Davis, The Requirement of a Trial-Type Hearing, 70 Harv. L.Rev. 193, 248–56 (1956); Comment, Deportation and Exclusion: A Continuing Dialogue Between Congress and the Courts, 71 Yale L.J. 760, 786 (1962), but they remain the teaching of the cases.

Predictably, however, life is more varied than the rules. Some situations do not easily fit into a neat compartment, cf. United States ex rel. Paktorovics v. Murff, 260 F.2d 610 (2d Cir. 1958) (2–1), and this case presents one of them. Appellants were not paroled into the country originally, nor was their initial presence here illegal. Therefore, they fall into neither of the well-recognized categories. A system of conditional landing permits is similar, of course, to admission by "parole" since both place limits on the purpose and duration of physical entry. Perhaps the fiction that the alien is still under detention "at the boundary line," Kaplan v. Tod, 267 U.S. 228, 230, 45 S.Ct. 257, 69 L.Ed. 585 (1925), is better served by the device of "parole" than by a conditional landing permit, although we would be hard put to explain why, except that the statute providing for parole, 8 U.S.C. § 1182(d) (5), explicitly provides that it "shall not be regarded as an admission of the alien," and 8 U.S.C. § 1282 is silent on the subject.[2] But the Service does not argue that parole and conditional entry have the same legal consequences: It says instead that once appellants' permits were revoked, their rights as conditional entrants disappeared; they were then in the position of alien crewmen detained on board the vessel who had not yet received permission to go on shore leave. As such, the teaching of *Leng May Ma* is that they do not have the statutory right to seek relief under 8 U.S.C. § 1253(h) and obtain a formal hearing thereon. Certainly, appellants do not claim that revocation of their conditional landing permits was improper; obviously, the determination that the Kordics did "not intend to depart on the vessel * * * which brought [them]" was justified. Once the permits were revoked, the analogy to crew members who had not yet left the ship

2. However, it does provide that: "Nothing in this section shall be construed to require the procedure prescribed in section 1252 of this title [8 U.S.C. § 1252] to cases falling within the provisions of this subsection."

has force—at least while the vessel was still in port so that it was "practicable," to use the language of section 1282(b), for appellants to be physically returned to it. On the other hand, appellants claim that once they were legally in the country they should at least have the same rights, under 8 U.S.C. § 1253(h), as a ship jumper; they reject the parole analogy since they did in fact make at least a temporary "entry."

While we do not accept the Service's analogy completely, we think its position is more nearly correct and that appellants are ▮ entitled to a formal hearing under section 1253(h). What authority there is on point is inconclusive. Appellants rely on United States ex rel. Szlajmer v. Esperdy, 188 F.Supp. 491 (S. D.N.Y.1960). In that case, a claim of political persecution was made by a crew member physically present in the country under an unrevoked conditional landing permit. Although the permit was thereafter revoked, the court held that the alien had a right to a full hearing under 8 U.S.C. § 1253(h); the court specifically rejected the parolee analogy and thus distinguished *Leng May Ma*. The Service did not appeal this decision but instead added to its regulations covering the alien seaman a new one, 8 C.F.R. § 253.1(e) quoted above, under which appellants' claim in this case was heard. The fact that at the time *Szlajmer* was decided there was no such "opportunity for relief to an alien crewman" claiming persecution was emphasized in a later case, which disagreed with *Szlajmer*. Glavic v. Beechie, 225 F.Supp. 24 (S.D. Tex.1963), aff'd, 340 F.2d 91 (5th Cir. 1964). In that case, a crewman was denied the right to a formal hearing before a special inquiry officer; the court

in *Glavic* primarily relied on the last sentence of 8 U.S.C. § 1282(b), quoted above,[3] which expressly makes the usual deportation procedures for aliens inapplicable to crewmen. Accord, Vucinic v. United States Immigration and Naturalization Service, 243 F.Supp. 113 (D.Ore. 1965).

We think the reasoning of *Glavic* persuasive, particularly its emphasis on congressional intent to deny formal hearings to alien crewmen in the position of appellants. Carrying out this purpose, the permits issued to appellants in this case provide:

> By accepting this conditional permit to land the holder agrees to all the conditions incident to the issuance thereof, and to deportation from the United States in accordance with the provisions of section 252(b) [8 U.S.C. § 1282(b)] of the Immigration and Nationality Act.

The significance of this language was recently emphasized by this court's observation in United States ex rel. Stellas v. Esperdy, 366 F.2d 266, 269 (2d Cir. 1966),[4] in dealing with an analogous situation, that:

> Petitioner suggests that it was improper for the INS to revoke his landing permit and instead to parole him, and he claims that if he had entered under his landing permit, he would have had the protection of full-scale deportation procedure, upon a revocation of the permit, or upon his failure to return to the ship, and could not be summarily deported. This misreads the statute. Sec. 252(b) of the Act, 8 U.S.C. § 1282 (b), provides that plenary deportation procedure, that required by § 242 of the Act, 8 U.S.C. § 1252, is not re-

3. See note 2 supra.

4. The judgment in *Stellas* was vacated by the Supreme Court and remanded with instructions that it be returned to the Service for further hearings. 388 U.S. 462, 87 S.Ct. 2121, 18 L.Ed.2d 1322 (1967). This was done at the suggestion of the Service itself to allow the relator to take advantage of an informal

hearing procedure (instituted while the cause was *sub judice*) by which an alien crewman paroled into the country must be given an examination before his parole may be revoked. See Memorandum for Respondent in the Supreme Court of the United States, p. 4. Under these circumstances, we think this court's remarks in *Stellas* have continuing validity.

quired in deporting an alien on revocation of his permit. Nor does the Constitution compel a different result. Appellant's permit, like all others, states, "By accepting this conditional permit to land the holder agrees to all the conditions incident to the issuance thereof, and to deportation * * * in accordance with the provisions of § 252 (b) * * *." Had appellant entered on a permit, he would have waived any Constitutional right to full-scale deportation proceedings. Compare United States ex rel. Szlajmer v. Esperdy, 188 F.Supp. 491 (S.D.N.Y.1960).

Appellants contend that the summary proceeding envisioned by section 1282(b) (and the waiver of a formal hearing) apply only to the two grounds specified in that section: whether the alien was a crewman and whether he intends to depart. On this issue of statutory construction both *Glavic* and *Vucinic* appear to disagree, as does the dictum in *Stellas*. Moreover, the terms of section 1282(b) and its legislative history afford no comfort to those who would read it to allow a formal hearing to these appellants. In tightening up the immigration laws affecting crew members, Congress was concerned with the sheer volume of seamen deserting ships and the need for "a summary type of deportation." S.Rep. No. 1515, 81st Cong., 2d Sess. 555–556 (1950). At least while the vessel is still in a United States port, the master can be required to receive the deserter and take him back with a minimum of difficulty, and the statute so provides. Congress thus established a statutory procedure to deal with a very narrow situation.[5] Thus, a crew member who overstays his twenty-nine day leave apparently obtains greater rights than one whose permit is revoked more swiftly. This may be thought anomalous, but the justification for quick resolution of the problem departs with the vessel, cf. United States ex rel. Martinez-Angosto v. Mason, 344 F.2d 673, 685 (2d Cir. 1964), and the distinction is recognized by the Service itself in regulations and decision. 8 C.F. R. § 252.2; Matter of M., 5 I. & N. 127 (1953). Moreover, surface anomalies are not absent in this field. A parolee whose parole has expired is in the country illegally, and an argument could be made that he is then like the ship jumper, who initially entered illegally but apparently is entitled to a formal hearing on a claim of persecution. The premise would be that it is strange to give the latter, a law breaker from the start, greater rights than one who initially arrived here properly. However, this notion has been impliedly rejected in a series of cases in this court. United States ex rel. Stellas v. Esperdy, 366 F. 2d 266 (2d Cir. 1966); [6] Lam Hai Cheung v. Esperdy, 345 F.2d 989 (2d Cir. 1965); Wong Hing Fun v. Esperdy, 335 F.2d 656 (2d Cir. 1964), cert. denied sub nom. Ng Sui Sang v. Esperdy, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965).

In any event, we deal only with the facts before us. Appellants' permits were revoked seven days after they received them, at a time when their ship had not yet departed. Congress intended to provide speedy treatment for this precise class of alien crew members. Moreover, the free dispensation of the privilege of shore leave is a necessity of international trade and comity. Acceptance of appellants' position in this case, with its concomitant increase in the difficulty of expelling from the country seamen who suddenly decide to stay here permanently, would be quite likely to prompt some curtailment in the issuance of landing permits—an intention we are reluctant to impute to Congress. See

---

5. How narrow it is appears from a close reading of 8 U.S.C. § 1282(b); the summary procedure and waiver of a formal hearing apply only to landing permits which are issued to those crewmen intending to leave on the vessel on which they arrive [D-1 permits issued under 8 C.F.R. § 252.1(d) (1)] and not to those who intended to depart on vessels other than those on which they arrived [D-2 permits issued under 8 C.F.R. § 252.1(d) (2)], and even then, only when receipt of the crewman and detention on board by the master are "practicable."

6. See note 4 supra.

Leng May Ma v. Barber, 357 U.S. 185, 190, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958). We characterize the decision to stay as sudden because it was so presented to us; obviously, if the Kordics had raised the threat of persecution before they left the vessel, they would have had no right to a formal hearing under 8 U. S.C. § 1253(h). Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072 (1958). In sum, we acknowledge that regulation of foreign crewmen raises troublesome questions, distinctions are frequently technical, and reliance on generalizations is dangerous. We also realize that the importance of fundamental fairness to the individual should not be overlooked in the pull of competing policies. Taking all of this into account, we need not agree with the Government that appellants were like crew members who had never left the vessel and had no statutory right at all to make a claim of persecution; but we do conclude that appellants were not entitled to the formal hearing they say was their due.

[2] Our conclusion is fortified by the procedural rights appellants were eventually accorded at the hearing they did receive. They were represented by an attorney of their own choosing, were allowed to offer documentary evidence, and had witnesses testify on their behalf. Relying on Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), appellants imply that they received less than procedural due process, apparently because the officials who heard their claim had a mixture of duties. But even a special inquiry officer, under the statute that appellants contend is applicable, may both "make determinations" and also "present * * * evidence, interrogate, examine, and cross-examine the alien or witnesses * * *." 8 U.S.C. § 1252(b); 8 C.F.R. § 242.8(a). Moreover, more recent authority indicates that the procedure which appellants received was "essentially fair." United States ex rel. Dolenz v. Shaughnessy, 200 F.2d 288 (2d Cir. 1952), cert. denied, 345 U.S. 928, 73 S.Ct. 780, 97 L.Ed. 1358 (1953); Mag-

giore Bakery, Inc. v. Esperdy, 238 F. Supp. 374 (S.D.N.Y.1964); cf. Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955).

II

■ Appellants also argue that the district court applied an improper standard in reviewing the decision of the District Director not to suspend deportation. They urge that Judge McLean should have applied the test of "substantial evidence," not "abuse of discretion."

The District Director reviewed the record before him and concluded that appellants' claim "that they may be persecuted if returned to Yugoslavia * * * * is utterly lacking in truth." Some of the facts the District Director relied upon are that Mr. Kordic has been sailing in and out of Yugoslavia since 1961 on Yugoslav vessels with the knowledge of the Yugoslav Government, despite his claim that he had had "trouble" since 1963 because he would not join the Communist Party; that although his position allegedly was worsened by marrying a woman related to persons who had fled Yugoslavia, that government permitted him to have his wife join him as a third cook on a vessel bound for the United States, although she actually had no functions to perform; and that the punishments given for ship desertion in Yugoslavia are "not inordinate." On the entire record, the Director concluded that appellants

> do not honestly fear persecution if returned to Yugoslavia. In my judgment, they are only seeking to immigrate to the United States to a better economic life.

Judge McLean concluded that while he might not have been persuaded, as was the District Director, that appellants were acting in bad faith, nevertheless, their

> evidence of persecution was not so strong that it can be said that the

District Director acted arbitrarily in refusing to uphold their claim.

The judge examined not only the files of appellants but also those of Mrs. Kordic's brothers who had left Yugoslavia and come to the United States. The judge concluded that he was "unable to say that the decision of the District Director was an abuse of discretion."

Emphasizing this last phrase and relying on Wong Wing Hang v. Immigration and Naturalization Service, 360 F.2d 715, 717 (2d Cir. 1966), appellants argue as follows: The District Director was called upon to engage in a two-step process. The first was a factual inquiry as to the probability that appellants would be subjected to persecution if returned to Yugoslavia; the second was an exercise of his discretion on the facts he had found. In *Wong Wing Hang*, we said that the first step—the "factual findings on which a discretionary denial of suspension is predicated"—"must pass the substantial evidence test." Therefore, according to appellants, Judge McLean's statement that the District Director's decision was not an abuse of discretion shows that he used the wrong test of review.

We think this argument is incorrect. A close reading of the judge's opinion demonstrates that he analyzed the evidence carefully to see if appellants would be subjected to persecution; he concluded that they had not made out a clear case. For instance, referring to appellants' fears of persecution, he stated:

> I cannot say with certainty that they are not justified, but on the other hand, I cannot say with certainty that they are.

If Judge McLean was unable to say that the District Director was wrong on this crucial point, there had to be, in his view, substantial evidence to support either conclusion. Moreover, even if the judge had applied the wrong test, we would be obliged to apply the right one; doing so, we conclude that the District Director's determination should not be disturbed.

Accordingly, the judgment is affirmed.