Vicko GLAVIC, Plaintiff,

v.

Charles J. BEECHIE, District Director, and Horace C. Harris, Officer in Charge, Houston, Immigration and Naturalization Service, Defendants.
Civ. A. No. 63–H–515.

United States District Court
S. D. Texas,
Houston Division.
Dec. 31, 1963.

Barker, Barker & Coltzer, Elmo Schwab, Jr., Galveston, Tex., and Sam Williamson, Houston, Tex., for plaintiff.

Woodrow Seals, U. S. Atty. for Southern Dist. of Texas, Morton L. Susman, Houston, Tex., for defendants.

NOEL, District Judge.

This action is brought by an alien seaman in an attempt to obtain a hearing before a special inquiry officer of the Immigration and Naturalization Service on his request for parole into the United States. Plaintiff alleges that he will be subject to persecution if he is required to return to his Communist-dominated homeland.

Plaintiff arrived at San Diego, California, in the latter part of August, 1963 on the M/V "Rudor Boscovic," a Yugoslav vessel. On August 24, 1963 he was

inspected by an immigration officer, and upon satisfying the immigration officer that he as a bona fide crewman and that he intended to depart with the vessel, he was granted a conditional landing permit for the time the vessel was to be in port, not exceeding 29 days, pursuant to 8 U.S.C.A. § 1282(a) (1).

On August 25, 1963 plaintiff left his ship and caught a bus to Houston. He ultimately arrived in Galveston, where he sought out one who spoke his language. Plaintiff presented himself to the Immigration Service in Galveston on September 3, 1963. In an affidavit given to the Service that day he stated "I refuse to return to my ship because I never want to go back to Yugoslavia." That same day plaintiff's conditional permit to land was revoked and his detention and deportation on board the M/V "Rudor Boscovic" was directed pursuant to 8 U.S.C.A. § 1282(b).

On the following day plaintiff was interviewed by an immigration officer at Galveston in the presence of his attorney. Plaintiff's attorney requested that plaintiff's deportation be withheld and that he be given a formal hearing under 8 U.S. C.A. § 1253(h), before a special inquiry officer, on his allegation of threatened physical persecution. At that time the District Director determined that plaintiff was not entitled to such a hearing, and treated plaintiff's request as one for parole under 8 C.F.R. 253.1(e), supplementing 8 U.S.C.A. § 1182(d) (5) and providing less formal procedures for the parole of alien crewmen alleging persecution; the request was denied.

An application for writ of habeas corpus was filed by plaintiff in this Court on September 5, 1963. At the hearing held on that application, after it was argued that plaintiff had not been provided full opportunity at the interview with the immigration officer to present testimony or evidence in support of his allegation of persecution, the Assistant United States Attorney suggested to the Court that the matter be returned to the Immigration Service to afford plaintiff full opportunity to present all evidence and testimony in support of his claim. The Court issued an order on September 13, 1963 requiring that plaintiff's deportation be withheld "pending a hearing by the District Director, Immigration and Naturalization Service, in accordance with law and/or regulation." It was, however, understood that the Immigration Service remained firm in its position that any relief available to plaintiff upon a claim of persecution would be under the regulation 8 C.F.R. 253.1(e), and not under 8 U.S.C.A. § 1253(h).

Although plaintiff continued to claim a right to have his claim heard before a special inquiry officer, and without waiving that claim, he elected to accept the opportunity to fully present the evidence in support of his claim to an immigration officer in accordance with 8 C.F.R. 253.1 (e). On September 20, 1963 plaintiff was accorded such an interview. His attorney was present and was permitted to interrogate plaintiff freely and given full opportunity to present any evidence on behalf of the plaintiff. On the basis of the matters presented at that interview the District Director found that plaintiff had not established that he would suffer persecution if required to return to Yugoslavia, and again denied him parole under the provisions of 8 U.S.C.A. § 1182 (d) (5).

Plaintiff now seeks review under 5 U. S.C.A. § 1009 of the action of the District Director and Officer in Charge, as well as a declaratory judgment under 28 U.S.C.A. § 2201 that the regulation relied upon by the defendants, 8 C.F.R. 253.1(e), and the interview and determination pursuant thereto are void, and that plaintiff is entitled to the special hearing requested. The parties have presented to the Court, both orally and by briefs, their arguments on the legal points involved, and there being no dispute as to the relevant facts, the matter is now before the Court for decision.·

Plaintiff's request for hearing under 8 U.S.C.A. § 1253(h) rests upon his desire to be heard by a special inquiry officer provided for such hearings. It is his claim that the special inquiry of-

ficer, although a member of the Immigration Service, is not accountable to immigration enforcement officers and is therefore less likely to be biased against plaintiff. Although plaintiff was granted the fullest opportunity to present his story and supporting evidence at the September 20, 1963 interview, held pursuant to 8 C.F.R. 253.1(e), he complains that the 8 C.F.R. 253.1(e) procedure places decision on his request for parole in the hands of enforcement officers of the Immigration Service. Although hastening to explain that the defendants are public servants of the greatest ability and integrity, plaintiff complains that "there still remains an intrinsic evil in the commingling of adjudicative and quasi-judicial functions with enforcement functions."

The solution of the problem raised by plaintiff must be sought in an analysis of the Immigration and Nationality Act. The current Act is a comprehensive statute born of a rich heritage of congressional regulation of immigration. The statutory provisions *generally* applicable to deportation are to be found in 8 U.S.C.A. §§ 1252–1254. Included within those provisions is the one under which plaintiff wishes to be heard. Prior to 1940 the expulsion of deportable persons was mandatory. The only avenue of relief in a hardship case was by private bill in Congress. Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281. Since then the Attorney General has been given the power to grant discretionary relief in deportation cases under various special circumstances. Thus, 8 U.S.C.A. § 1253(h) now authorizes the Attorney General to withhold deportation of an alien to any country in which in the opinion of the Attorney General the alien would be subject to physical persecution, and for such time as the Attorney General deems necessary. The Act currently requires that deportation proceedings under 8 U.S.C.A. § 1252 be heard by a special inquiry officer, and the administrative discretion to grant a suspension of deportation has historically been exercised

as an integral part of the deportation proceedings before the special inquiry officer. See Foti v. Immigration and Naturalization Service, 375 U.S. ——, 84 S.Ct. 306. The central question here is whether the *general* deportation provisions discussed above apply in this case. Plaintiff is an alien crewman who was granted the purely discretionary privilege of landing temporarily in the United States after he had satisfied the Immigration Service that he intended to depart on the vessel on which he had arrived. During the time in which his conditional landing permit was extant he made known to the Immigration Service that he no longer intended to depart the United States on his vessel. His conditional landing permit was then immediately revoked and he was taken into custody, where he remains.

From early times Congress has recognized that alien crewmen presented a special problem and has provided special statutory procedures for their handling. The current Act contains separate provisions, 8 U.S.C.A. §§ 1281–1287, which impose unique controls on the entry and departure of alien crewmen. Those provisions permit the temporary landing of certain nonimmigrant crewmen so that normal operations in the conduct of foreign commerce may be maintained. Plaintiff took advantage of them when he obtained a conditional landing permit which allowed him to leave his ship in San Diego.

But the special statutory provisions are also designed to insure that alien crewmen will duly depart the United States. Under 8 U.S.C.A. § 1282(b) plaintiff's landing permit was properly revoked when he made known to the Immigration Service that he no longer intended to depart the United States on board his vessel. Upon revocation of his landing permit the Immigration Service would normally have summarily returned plaintiff to his ship, for 8 U.S.C.A. § 1282(b) gives the immigration officers authority to take into custody one whose conditional landing permit has been revoked and to turn him over to the com-

manding officer of his vessel for detention on board. And notably, those very provisions under which plaintiff was allowed to enter the United States, and which authorize his summary return to shipboard upon revocation of his landing permit, *expressly make inapplicable* to such a "deportation" the general deportation procedures under 8 U.S.C.A. § 1252 which, as discussed above, are normally applicable to aliens.

The unusual element which complicates this case is that plaintiff, alleging that he would be subjected to persecution if returned to Yugoslavia, requested that he not be returned to his ship. A very similar situation occurred in United States ex rel. Szlajmer v. Esperdy, 188 F.Supp. 491 (S.D.N.Y.1960). At the time that case was decided there was no regulation providing an opportunity for relief to an alien crewman claiming that he would be persecuted if returned to his ship and thence to his homeland. The federal district court under those circumstances held that the seaman was entitled to be heard on his claim under 8 U.S.C.A. § 1253(h), the general provision under which this plaintiff desires to be heard, notwithstanding the statutory proviso that 8 U.S.C.A. § 1252 procedures were inapplicable to alien crewmen. That decision was not appealed, and whether its analysis of the statute under those conditions was correct or not, its correctness certainly appears questionable under present conditions and in light of the recent decision of the Supreme Court in Foti, supra, in which it was held that a statutory reference to 8 U.S.C.A. § 1252(b) included by implication the closely related sections 1253 and 1254, requiring direct appeal to the courts of appeal on final orders of denial of suspension of deportation under those sections.

■ As a result of the Szlajmer case, the Attorney General promulgated the regulation, 8 C.F.R. 253.1(e), which provides an opportunity under 8 U.S.C.A. 1182(d) (5) for an alien crewman to obtain parole into the United States if he faces persecution in a Communist or Communist-dominated country. The application of that regulation in the present case appears to coincide with the statutory framework, and to be much more in keeping with the congressional intent as applied to alien crewmen than Szlajmer. Therefore, the Court is of the opinion that a hearing before a special inquiry officer under 8 U.S.C.A. § 1253(h) is not required by the Act in this case.

■ Plaintiff has also raised an issue of constitutional due process. Whether plaintiff is entitled to that constitutional guarantee in these circumstances is open to question, but at any rate it would appear that there has been no deprivation of due process here. Plaintiff has been heard by admittedly responsible officials, and under the same procedures applicable to all other alien seamen under similar circumstances. Plaintiff was given full opportunity to tell his story; the District Director simply was not convinced.

After having carefully reviewed the transcript of plaintiff's interview, the Court is of the opinion that plaintiff was afforded the widest latitude in presenting his claim. His attorney was allowed to ask him leading questions, and did so extensively without being restricted in any manner. Plaintiff's attorney was allowed to present every shred of evidence at his command to support plaintiff's allegations. There was absolutely no restriction placed upon plaintiff; in fact, he received far greater latitude than he would normally have been accorded in a court proceeding. Even so, virtually nothing was presented to support plaintiff's claim.

■ It appears clear from the transcript that plaintiff's chief concern is that he will be required to serve in the Yugoslavian army upon his return to Yugoslavia. He and other young men in many countries, including the United States, face the same problem; it is not the sort of persecution which has been held to justify parole. See, e. g., Batistic v. Pilliod, 286 F.2d 268 (7th Cir. 1961).

**28**

The Court therefore concludes that the action of the defendants was fairly and constitutionally taken in accordance with the applicable statutes and valid regulations, and orders that the District Director's decision be implemented.

This Memorandum and Order shall constitute the Findings of Fact, Conclusions of Law and Order of this Court, which the Clerk will file and of which he will furnish each of the parties a copy.