**SUI FUNG LUK, Petitioner,**

v.

**George K. ROSENBERG, District Director, Immigration and Naturalization Service, Respondent.**

**No. 67–621.**

United States District Court
C. D. California.

Dec. 15, 1967.

See also D.C. 271 F.Supp. 485.

Kwan & Cohen, by Hiram W. Kwan, Los Angeles, Cal., for petitioner.

Wm. Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., and Carolyn M. Reynolds, Asst. U. S. Atty., by Carolyn M. Reynolds, Los Angeles, Cal., for respondent.

## Decision Dissolving Restraining Order and Permitting Deportation to Hong Kong

HAUK, District Judge.

This matter comes before the Court now upon Respondent's Motion for order dissolving the Court's restraining order of August 23, 1967 which has prevented Respondent from deporting Petitioner pending further hearing and order by this Court.[1]

In the order of August 23, 1967, the Court directed that the Respondent grant Petitioner a further hearing on his allegation of fear of persecution if deported to Hong Kong, pursuant to one or the other of the following two sets of provisions of the Immigration and Nationality Act of 1952 as amended and the Code of Federal Regulations 489:[2]

(1) Section 243(h) of the Immigration and Nationality Act of 1952, as amended 8 U.S.C. § 1253(h), 8 C.F.R. 243.4, as interpreted and applied in United States ex rel. Szlajmer v. Esperdy, 188 F.Supp. 491 (S.D.N.Y. 1960);

or

(2) Section 212(d) (5) of the Immigration and Nationality Act of 1952 as amended, 8 U.S.C. § 1182(d) (5), 8 C.F.R. 253.1(e),[3] as interpreted and

---

1. Sui Fung Luk v. Rosenberg, 271 F.Supp. 485 (C.D.Cal.1967).

2. Sui Fung Luk v. Rosenberg, 271 F. Supp. 485, 490 (C.D.Cal.1967).

3. After the decision in Sui Fung Luk, supra, notes 1 and 2, and prior to the District Director's decision now before the Court, Section 253.1 of 8 C.F.R. was recodified and amended and the substance of Section 253.1(e) was moved to and became new Section 253.1(f) in the following language:

"(f) *Crewmen alleging persecution.* Any alien crewman refused a conditional landing permit or whose condi-

applied in Glavic v. Beechie, 225 F. Supp. 24 (S.D.Tex.1963), aff'd 340 F.2d 91 (5th Cir. 1964).

The Court made the following further order:

"Regardless of whether the hearing is conducted on the one hand pursuant to 8 C.F.R. 243.4 to determine if petitioner is entitled to a stay of deportation, or on the other hand pursuant to 8 C.F.R. 253.1(e) [now (f)] to determine if petitioner should be paroled into the United States, because of his fear of persecution, petitioner in either event shall be granted a hearing which conforms to constitutional due process. He shall be given notice of the hearing, an opportunity to be heard and his attorney shall be 'allowed to present every shred of evidence at his command' to support his allegations. Glavic v. Beechie, supra, 225 F.Supp. at page 27."

In support of the Motion to dissolve the Court's order restraining the Immigration and Naturalization Service from deporting Petitioner, the District Director of the Service has produced a certified copy of the Administrative Record, including his decision (see Appendix hereto) upon the hearing which, pursuant to the Court's order of August 23, 1967, he elected to afford Petitioner under the second of the two alternatives offered by the Court, namely § 212(d) (5) of the Immigration and Nationality Act of 1952 as amended, 8 United States Code 1182 (d)(5), 8 C.F.R. 253.1(e) [now (f)], as interpreted and applied in Glavic v. Beechie, 225 F.Supp. 24 (S.D.Texas 1963) aff'd 340 F.2d 91 (5th Cir. 1964).

Following the hearing Respondent issued his written decision denying Petitioner's application for parole into the United States under 8 C.F.R. 253.1(f) [formerly (e)] and affirmed his deportation to Hong Kong on two grounds:

1. That 8 C.F.R. 253.1(f) by its own terms limits its benefits to an alien crewman who alleges that he cannot return to a Communist, Communist-dominated, or Communist-occupied country because of fear of persecution, and that the British Crown Colony of Hong Kong is not such a country.

2. That even if Hong Kong were a Communist country, the Petitioner failed to establish that his deportation to Hong Kong would subject him to persecution or fear of persecution.

■ From study of the record and decision upon the administrative hearing, and after full argument, it is clear that the Petitioner has had "a hearing which conforms to constitutional due process"; he has been "given notice of the hearing and an opportunity to be heard"; and his attorney has been "allowed to present every shred of evidence at his command" to support his allegations. Glavic v. Beechie, 225 F.Supp. 24, 27 (S.D.Tex.1963) aff'd 340 F.2d 91 (5th Cir. 1964). It is noted, moreover, that in addition to his attorney, Petitioner had present an interpreter and his employer.

■ The decision of the Respondent is supported by substantial evidence in the record. That Hong Kong is not a Communist, Communist-dominated, or Communist-occupied country as required by the regulation is obvious. On the contrary, it is a British colony and a favorite American tourist spot. Although this would be sufficient reason to deny

tional landing permit has been revoked who alleges that he cannot return to a Communist, Communist-dominated or Communist-occupied country because of fear of persecution in that country on account of race, religion or political opinion shall be removed from the vessel or aircraft for interrogation. Following the interrogation, the district director having jurisdiction over the area where the alien crewman is located may in his discretion authorize parole of the alien crewman into the United States under the provisions of section 212(d) (5) of the Act. If parole is not authorized, the crewman shall be returned to the vessel or aircraft on which he arrived in the United States."

Petitioner's application, the Respondent also analyzed the testimony and evidence presented by the Petitioner and found that it did not establish persecution or fear of persecution if Petitioner were deported to Hong Kong.

Petitioner testified as to his anti-communist activities from 1940–1946 when he was a member of the Nationalist Guerrilla Force in China. Thereafter he moved to Hong Kong and worked as a cook until 1955. Then he worked as a crewman. He stated that he has a common-law wife and three children living in Hong Kong to whom he sends money. Although he mentioned fear of persecution if returned to China, there is no evidence or testimony to show that he or his family ever suffered or will suffer persecution in Hong Kong.

The affidavit of Mrs. I. Tao Fong states that Petitioner's life is threatened because of the presence of the Communist underground in Hong Kong. But this is pure speculation, unsupported by any evidentiary facts, and is conclusively controverted by Petitioner's admission that he lived and worked in Hong Kong from 1942 to 1962 without any assertion or even intimation that he had anything but a normal life during that time.

Based upon the certified record and all the facts adduced at the administrative hearing, the Court must necessarily find and conclude that the Petitioner has been afforded due process and that the Order of August 23, 1967 should now be dissolved, unless there is some validity to Petitioner's claim that he is entitled to a hearing before a special inquiry officer, pursuant to 8 U.S.C. § 1253(h), instead of or in addition to the hearing he actually received before the District Director, Respondent herein.

■ In United States ex rel. Kordic v. Esperdy, 386 F.2d 232 (2d Cir. Nov. 8, 1967) the Second Circuit confronted an almost identical situation in which two alien crewmen (man and wife) who had been paroled under permit and then failed to return to their Yugoslavian ship, alleged they could not return to Yugoslavia without being subject to persecution and claimed they were entitled to a hearing before a special inquiry officer under 8 U.S.C. § 1253(h), rather than before the District Director under 8 U.S.C. § 1182(d)(5). The Court affirmed the District Court's decision that this type of District Director hearing under 8 U.S.C. § 1182(d)(5) was the proper one to be granted to the alien crewmen and that the District Director's determination that they would not be subject to persecution if deported was supported by substantial evidence. See also Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) which teaches that when a paroled alien alleges threat of political persecution upon deportation he is not entitled to a hearing under 8 U.S.C. § 1253(h) since he is not "within the United States" as required by that Section.

■ Moreover, as we hold here, the Court held in United States ex rel. Kordic v. Esperdy, supra, that the treatment which the alien crewmen received in the District Director hearing under 8 U.S.C. § 1182(d)(5) not only met with all of the requirements of procedural due process, Glavic v. Beechie, 225 F.Supp. 24, 27 (S.D.Tex.1963) aff'd 340 F.2d 91 (1964), but constituted a procedure which was "essentially fair". United States ex rel. Dolenz v. Shaughnessy, 200 F.2d 288 (2d Cir. 1952), cert. denied, 345 U.S. 928, 73 S.Ct. 780, 97 L.Ed. 1358 (1953); Maggiore Bakery, Inc. v. Esperdy, 238 F.Supp. 374 (S.D.N.Y.1964); cf. Marcello v. Bonds, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955).

■ Concluding as we do that the District Director followed the correct hearing procedure under 8 U.S.C. § 1182 (d)(5), and made his decision upon substantial evidence, the Court has this date signed and entered formal Findings of Fact, Conclusions of Law, Judgment and Order, submitted by Counsel for Respondent District Director, dissolving the restraining order of August 23, 1967, thereby permitting Petitioner to be deported to Hong Kong forthwith.

APPENDIX

# United States of America

### DEPARTMENT OF JUSTICE
### IMMIGRATION AND NATURALIZATION SERVICE

November 7 , 19 67

## CERTIFICATION

BY VIRTU... ...f the ...rity vested in me by Title 8, Code of Federal Regulations, Part 103

a regulation is... ... by th... ...orney General pursuant to Section 103 of the Immigration and

Nationality A...

I HERE... ...ERTIF... ...at the annexed documents are ~~xxxxxxxxxx~~ copies thereof, from the

records of th... ...d Imm... ...on and Naturalization Service, Department of Justice, relating to

### SIU FUNG LUK

File No. A15 270 763 , of which the Attorney General

is the leg... ...stodian... ...irtue of Section 103 of the Immigration and Nationality Act.

IN WITNESS WHEREOF I have hereunto set my hand
and caused the seal of the Department of Justice,
Immigration and Naturalization Service, to be
affixed, on the day and year first above written.

*R. L. Williams*
R. L. Williams
Acting District Director
Immigration and Naturalization Service
Los Angeles, California

Form G-
(Rev. 2-

914

November 3, 1967

Mr. Sui Fung Luk
c/o Hiram W. Kwan, Esq.
1011 North Broadway, Suite 203
Los Angeles, California 90012

Dear Mr. Luk:

Attached please find my decision denying your application that you be permitted to enter the United States under the parole provisions of 8 U.S.C. 1182(d)(5) and 8 C.F.R. 253.1(f).

No administrative appeal is provided from this decision.

Sincerely,

George K. Rosenberg
District Director

cc: Mr. Sui Fung Luk
c/o Mouling Restaurant
6530 West Sunset Boulevard
Hollywood, California 90025

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

File:    A15 270 763 - Los Angeles                          November 3, 1967

In the Matter of        )
                        )
     Siu Fung LUK   )              IN EXCLUSION PROCEEDINGS
                        )
         Applicant      )

APPLICATION: Parole into the United States

IN BEHALF OF APPLICANT:   Hiram W. Kwan, Esq.
                          1011 North Broadway, Suite 203
                          Los Angeles, California 90012

By order dated August 23, 1967, United States District Court Judge A. Andrew
Hauk of the United States District Court for the Central District of California,
in Civil Action No. 67-621-AAH, directed that the District Director of the
Immigration and Naturalization Service grant the instant applicant a hearing on
his allegation of fear of persecution if deported to Hong Kong pursuant to one or
the other of the following two sets of provisions of the Immigration and Nationality
Act of 1952, as amended, and the Code of Federal Regulations:

   (1)   Section 243(h) of the Immigration and Nationality Act of 1952,
         as amended, 8 U.S.C. 1253(h).

                                 or

   (2)   Section 212(d)(5) of the Immigration and Nationality Act of
         1952, as amended, 8 U.S.C. 1182(d)(5).

The Court by that order also found that this applicant was not entitled to a depor-
tation hearing under 8 U.S.C. 1252 but only to a proceeding to determine his ad-
missibility to the United States under 8 U.S.C. 1225(a).

The Supreme Court of the United States in Leng May Ma v. Barber, 78 S. Ct.
1072, 357 U.S. 185, 2 L. Ed. 2d 1246 (Cal. 1958), held that the provisions of

8 U.S.C. 1253(h) were not available to an applicant for admission such as the instant applicant. Accordingly, compliance with the order of Judge Hauk was made by according the instant applicant the benefits of the provision of 8 U.S.C. 1182(d)(5) and 8 C.F.R. 253.1(f).

In accordance with the order of the Court dated August 23, 1967, the applicant and his attorney were given due notice on October 11, 1967, of the interrogation of the applicant to be held on October 23, 1967, required by 8 C.F.R. 253.1(f) with opportunity to be heard. The applicant's attorney was afforded and allowed full opportunity "to present every shred of evidence at his command to support his allegations".

The only evidence in support of this applicant's allegation of fear of persecution if deported to Hong Kong is an affidavit dated October 20, 1967, made by one Mrs. I. Tao Fong in which she alleges that this applicant's life "was still threatened by the presence of the Communist underground in the British Crown Colony of Hong Kong", and an affidavit of the applicant dated October 30, 1967, that "Hong Kong presently festers with Communist Agents and they have been known to kidnap anti-communists and return such individuals to Communist China for persecution. That daily over fifty (50) bombs are placed into various places in Hong Kong creating a situation of terror."

The applicant's deportation to the British Crown Colony of Hong Kong is in accordance with 8 U.S.C. 1227. Administrative and judicial notice may be taken of the fact that the British Crown Colony of Hong Kong is not a Communist, Communist-dominated, or Communist occupied country. 8 C.F.R. 253.1(f) by its own terms limits its benefits to an alien crewman who alleges that he cannot return to a Communist, Communist-dominated, or Communist occupied country because of fear of persecution in that country on account of race, religion, or political opinion. It is clear, therefore, that this applicant is not eligible to make the present application and its denial on that basis would be appropriate.

On the merits, however, assuming that this applicant were eligible to apply for the benefits of 8 C.F.R. 253.1(f), it is concluded that his fear based upon an alleged Communist underground in Hong Kong or the fact that bombs are being placed in various places in Hong Kong, does not individually or collectively establish that his deportation to the British Crown Colony of Hong Kong would subject him to persecution or fear of persecution on account of his race, his religion, or his political opinion. Kwong Chau v. Esperdy, 67 Civ. 3231 (S.D.N.Y. September 5, 1967); Lam Leung Kam v. Esperdy, 67 Civ. 2833 (S.D.N.Y. August 7, 1967); and Chan Chung Yin v. Esperdy, 67 Civ. 3193 (S.D.N.Y. August 30, 1967).

- 2 -

The applicant's allegations concerning his fear of persecution if deported to the mainland of China are irrelevant and immaterial since his deportation is not being directed to the mainland of China and the order of the Court of August 23, 1967, directs only that this applicant be granted a hearing on his allegation of ·fear of persecution if deported to Hong Kong.

ORDER: It is ordered that the application for parole into the United States in accordance with 8 U.S.C. 1182(d)(5) and 8 C.F.R. 253.1(f) be and the same is hereby denied.

George K. Rosenberg
District Director·

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service

RECORD OF SWORN STATEMENT

Office:          Los Angeles                      File No. A 15 270 763

Statement by:    Siu Fung LUK

In the case of:  Siu Fung LUK

At:              Los Angeles, California    Date:  October 23, 1967

Before:          Michael R. Terle, Immigrant Inspector

In the   English and Chinese   languages   Interpreter: H. H. Hee
         (Mandarin Dialect)
Persons present:   Hiram W. Kwan, Attorney for Respondent

                   Mrs. Loretta Hung, Employer of Respondent

     I am an officer of the United States Immigration and Naturalization Service authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality laws of the United States. I desire to take your sworn statement regarding your claim of persecution or fear of persecution should you be required to return to the foreign country from which you came.

Q    Any statement you make must be given freely and voluntarily, and may be used against you or any other person in Immigration and Naturalization proceedings. Do you understand?

A    Yes.

Q    Do you thoroughly understand the interpreter, Mr. Hee?

A    Yes, I do understand the interpreter.

Q    Are you willing to answer my questions at this time?

A    Yes, I am willing to answer.

Q    Stand and raise your right hand, please, to be sworn. (Complied) Do you swear to tell the truth, the whole truth, and nothing but the truth, so help you God?

A    Yes, I do.

*S F L*

Sworn Statement of Siu Fung Luk - File No. A 15 270 763
In case of:   Same                     October 23, 1967

Q   Pursuant to an order of the United States District Court, Cen-
    tral District of California, dated August 23, 1967, you will
    now be granted an opportunity to present your claim that you
    fear persecution on account of race, religion, or political
    opinion should you be deported or required to depart to the
    country from which you came.

A   Yes, I do understand.

Q   Since your manner of entry and subsequent proceedings before
    this Service are a matter of record, they will not be repeated
    here.   You and your attorney, Mr. Kwan, will be given an un-
    restricted opportunity to present by testimony or by evidence
    materials to attempt substantiation of your claim of fear of
    persecution.   Do you understand?

A   Yes, I understand.

Q   You are advised that the burden of proof is upon you to estab-
    lish to the satisfaction of this Service the validity of your
    claim.   Do you understand?

A   Yes.

Q   What is your true, full, and correct name?

    Note:  Respondent writes Chinese characters and hands to
           interpreter.

A   I have two names.   My true name is KOO, Siu-Fung.   I am also
    known as LUK, Siu-Fung which was used to avoid the Communist
    attention.

Q   Have you used the name "KOO" in the United States at all?

A   No.   I use LUK instead.

Q   What is your date and place of birth?

A   I was born at Wo Sik District, Kiangsu Province, China, on
    the tenth moon and the tenth day in the year 1924.

Q   How long did you live in China after your birth?

A   I left Mainland China in 1950 for Hong Kong after the

- 2 -                              S. F. L

**920**

Communists dominated the Mainland.

Q   Did anyone else leave China with you when you departed for Hong Kong in 1950?

A   No, I went by myself.

Q   How were you employed in your native country?

A   I was a member of the Nationalist Guerrilla Forces of the Nationalist Government.

Q   When?

A   1940.

Q   Were you a member of the guerrilla forces from 1940 to 1950?

A   After the victory, that is, after the Second World War in 1946, I went to Shanghai to work as a cook.

Q   Then you contend you were a member of the Nationalist Guerrilla Force in China from 1940 to 1946?

A   That is correct, sir.

Q   Where were you employed from 1946 to 1950?

A   From 1946 to 1950, I worked in Shanghai as a cook.

Q   In what establishment were you so employed?

A   I worked in the restaurant called Shiu Tung Man in Shanghai.

Q   For the complete 4-year period there approximately?

A   Yes.

Q   Why did you leave that employment?

A   Because the Communists wanted to arrest me.

Q   Why did they want to arrest you?

A   Because I am anticommunist.

- 3 -

S. F L

Sworn Statement of Siu Fung Lük - File No. A 15 270 763
Re.: In case of same                    October 23, 1967

Q     How did they know you were anticommunist?

A     Because I had been the head of the Second Unit of the Guer-
      rilla Forces of the Nationalist Government.

Q     How did they know this?

A     Because in the native village, there were communist and na-
      tionalist forces, so they found out that I was anticommunist
      and had been with the guerrilla forces.

Q     What name did you use at the time you were with the guerrilla
      forces?

A     I use my childhood name, Koo Chin Bo.

Q     What name did you use while you were employed at the restaurant
      at Shanghai?

A     I still use the name Koo Chin Bo.

Q     Why is it that you did not change your name then to escape
      detection?

A     That was still before the domination, before the control of
      the communists.

Q     Do you mean the control in your native village or control in
      Shanghai?

A     I am talking about Shanghai.

Q     Under what circumstances did you leave Mainland China for
      Hong Kong?

A     I came by train from Shanghai to Canton and from Canton to
      Hong Kong by rail.

Q     Were you ever persecuted at all while you were living in
      Mainland China?

A     No, because I escaped from Communist China.

Q     How were you employed while you were in Hong Kong?

A     I was working as a cook in a restaurant in Hong Kong.

- 4 -

*S.F.L*

**922**

Q    In what restaurant were you first employed there?

A    I first work for Sam Luk Kou restaurant, No. 34 Wellington
Street, Hong Kong.

Q    How long were you employed there?  From when to when?

A    I work there four years and six months, from 1951 to 1955.

Q    Where were you employed subsequently to that?

A    Then I work as a crewman on board the ship.

Q    By what shipping line were you employed afterwards?

A    I work for Taishan Steamship Company and Kinshan Steamship
Company.  Both have ships going to Southeast Asia.

Q    Did you ever own any property while living in Hong Kong at
any time?

A    No. 没有

Q    Do you have any family living in Hong Kong?

A    No. 有

Q    Have you ever been married?

A    Yes, I married before.

Q    To whom were you married and when?

A    My wife's name is Chan Yuk Chin, a native of Nanking.  We
lived as husband and wife in a common law husband-and-wife
relationship, in a common law husband and wife without legal
marriage, in 1959 in Hong Kong.

Q    How long did you reside with your common law wife?

A    About three years.

Q    Were there any children of this relationship?

A    Yes, three children.

- 5 -                                          S F L

Sworn Statement of Siu Fung Luk - File No. A 15 270 763
In the case of:  Same                          October 23, 1967

Q    What are their names and their dates and places of birth?

A    The No. 1 male is Koo Yuk Shan, ten years of age;
     No. 2 is Koo Ching Wah, age nine, a female; and
     No. 3 is a female also, Koo Ching Ping.  All of them were
     born in Hong Kong with birth certificates.

Q    Before, you previously stated that you commenced this common
     law relationship in 1959 and you stated these children are all
     the result of this relationship.  As far as their ages go, it
     does not appear that your relationship could have started as
     late as 1959.  Do you wish to clarify this?

A    Well, probably I may have made a mistake in the time we stayed
     together.  Instead of 1959, it should have been 1957, because
     it would be ten years now.

Q    Then these children were all born subsequent to the inception
     of your common law relationship with your wife?  Is that cor-
     rect?

A    Yes.

Q    Have you supported these children and your common law wife?

A    Yes, I do.

Q    Do you still support them?

A    Yes, I do.

Q    In what manner?

A    I send $200 U. S. monthly for their support.

Q    How long has this been going on?  This amount that you have
     been sending?

A    I all the time, I send $200.  Sometimes I send $100.  So,
     from $200 to $100 a month.

Q    Have you been supporting your common law wife and the three
     children of your relationship ever since your entry into the
     United States in 1962?

- 6 -

**924**

A    I did not send them all the time when I was sick.  I could not afford to do so.

Q    Does your family have any other means of support?

A    They depend on my support.  They have no other means to make a living.  The children are going to school.

Q    Has your wife been employed at all?

A    No, she is not employed.

Q    Where do they reside now?  The wife and children?

A    They stay by themselves, not with any people.

Q    What is their address do you know?

A    No. 45, Yuk Lan Building, Quan Tong, Kowloon, 3d Floor, Hong Kong.

Q    Are they obligated to pay the rent for this accommodation?

A    Yes, they have to.

Q    Is this what part of your support money goes for?

A    Yes.

Q    Do you correspond frequently with your wife?

A    We correspond once a month.

Q    Do you fear persecution on account of your race should you return to China?

A    Yes, because I have been a member of the Guerrilla Forces of the Nationalist Government.  They will kill me if I return or if I were deported back.

Q    You are bringing two factors into this, Mr. Luk:  One of your race and one your activities as associated with the guerrilla force.  I call your attention to the fact that we are only questioning here whether you would be persecuted because you are of the Chinese race and for that reason alone.

- 7 -

*S. F L*

Sworn Statement of Siu Fung·Luk - File No. A 15 270 763
In the case of:   Same                    October 23, 1967

A    Yes, being a Chinese, I am, however, I am Anticommunist Chinese.

Q    We'll go on to the next possibility:  Do you claim that you
     would be persecuted because of your religion?

A    Because I am a Catholic, and the Anticommunist Chinese regime
     is Anticatholic.

Q    How long have you been a Catholic?

A    I have since I came to Hong Kong.

Q    What were you previously?

A    Before, I did not belong to any religious group.

Q    How did you become a Catholic?

A    Because the Catholics treat the Chinese, is considered to be
     a very outstanding religious group and they teach people to.
     be honest and I strongly believe in that religious sect.   Be-
     cause before, I belong to the political unit, and after I
     reach Hong Kong, I want to abandon the political activity and
     become a religious person.

Q    How did you convert to the Catholic religion?  Through what
     procedure did you go?

A    My wife is also a Catholic and through the recommendation of
     the member of the Catholic Church and had gone to the reli-
     gious ceremony, I became a Catholic in the Catholic Church in
     Hong Kong.

Q    What was the name of the church with which you affiliated in
     Hong Kong?

A    St. Mary's Church.

Q    At what location?

A    Tiu King Ling.

Q    What church do you attend now?

A    Sunset.  I go to the Catholic Church on Sunset, but I offhand

- 8 -

S. F. L

Sworn Statement of Siu Fung Luk - File No. A 15 270 763
In the case of:   Same                              October 23, 1967

CANNOT RECALL THE NAME OF THE CHURCH.

Q   How often do you go?

A   I attend the church two times per month.

Q   What is the name of the priest at this church?

A   My English is not good enough, so I just know the Father of
the Church being Caucasian.

Q   Is the sermon delivered in English or Chinese?

A   In English.

Q   Do you understand the sermon?

A   Even though I do not understand, but just want to be there to
show my respect and my religious feeling.

Q   At what street intersection on Sunset is this church located?

A   It is around the corner of my working place in the 6000 block
on Sunset.

Q   Are you now carried as a member of this church on their rolls?

A   No, because in the first place, I do not know enough English
to talk to the person, and in the second place, I just want
to show myself as a religious person.

Q   Do you attend with anyone else or do you go alone?

A   By myself.

Q   Should you not have ever engaged in guerrilla activity and
had never demonstrated any opposition to the ruling power in
Mainland China, do you believe you would be persecuted should
you return - solely because you are of the Chinese race?

A   Even though I have not been engaged in the guerrilla activity,
being in any demonstration publically against the Communists,
being a Chinese going back to China would be a danger too be-
cause the Communist Chinese is a totalitarian regime.

- 9 -

*S F L*

Sworn Statement of Siu Fung Luk - File No. A 15 270 763
In the case of:  Same                    October 23, 1967

Q    Do you know from first-hand knowledge that a Chinese person
     returning to Mainland China would be persecuted for this
     reason alone?

A    Yes.

Q    Name an instance.

A    One of my relatives.  The Communists inquired about my where-
     abouts and he suffered physically from the Communist persecu-
     tion.

Q    How did he suffer?

A    The Communist China Regime kept on coming to inquire of my
     relative about my whereabouts day after day, and they gave
     him physical mistreatment, and my relative died on account of
     that.

Q    How did you learn of this?

A    Because a fellow countryman from my native village came to
     Hong Kong and told me so.

Q    Then this was not first-hand knowledge but through a third
     party?  Is this correct?

A    That is correct.

Q    Do you fear that you would be persecuted should you return
     to Mainland China because of your political opinions?

A    Certainly.

Q    In what respect?

A    I am certain they would kill me on account of my different
     opinion from the Communists.

Q    How would or did you express your "different" opinion?

A    As far as principles and policies are concerned, my political
     opinion is certainly different from the Communists.

Q    Mr. Luk, you are not answering my question.  In what manner
     did you express your political difference?

- 10 -

*S F L*

Sworn Statement of Siu Fung Luk - File No. A 15 270 763
In the case of:   Same                              October 23, 1967

A    Because I have been engaging in the activity against the com-
     munists before, and I was known in my native district as one
     of the anticommunist persons.

Q    Do you have any evidence to substantiate your claim to have
     been with the Nationalist Guerrilla Forces in China?

A    I have some.

     Note:  Respondent presents document.

INSPECTOR TERLE (FOR THE RECORD):

     Respondent presents an affidavit by Mrs. I. Tao Fong executed
     October 20, 1967, at Los Angeles, California.  A copy of this
     affidavit will be made part of the record as Exhibit A.

INSPECTOR TO RESPONDENT:

Q    Why did you terminate your employment as a cook at the Sam Luk
     Kao Restaurant and start employment as a crewman?

A    Because the employer, the boss, quit, but the business remained.

Q    While you were employed as a crewman out of Hong Kong from
     1955, did you still consider your home port to be Hong Kong
     with your wife and children there?

A    While employed as a crewman, I used to go back to Hong Kong
     to visit my family.

Q    I present for your inspection Form I-269 issued by the Immigra-
     tion and Naturalization Service at New York, which is a Certi-
     ficate of Identity issued in the name of Luk, Siu Fung.  Do
     you identify this document with the picture and facts stated
     thereon as relating to you?

     Note:  Respondent and interpreter examine aforementioned
            Form and converse.

A    Yes, that document is related to me.

INSPECTOR TERLE (FOR THE RECORD):

     This Form I-269 will be made part of the record as Exhibit B.

- 11 -

S. F L

Sworn Statement of Siu Fung Luk - File No. A 15 270 763
In the case of:  Same                    October 23, 1967

INSPECTOR TO RESPONDENT:

Q    Do you understand?

A    Yes, I understand.

Q    You are advised that the complete record of proceedings in
     your case will be the basis for determination as to whether
     your claim to fear of persecution - should you return to your
     native country - is grounds for further consideration in this
     Service's proceedings.  Do you understand?

A    Yes.

Q    Do you have anything further you wish to state at this time,
     Mr. Luk?

A    No, I don't have any further statement to make because I can-
     not go back to China.  Going back means to be killed by the
     communists.

Q    Have you understood all the questions asked you here today?

A    Yes, I understood.

INSPECTOR TO MR. KWAN:

Q    Mr. Kwan, do you wish to question your client or offer any
     evidence at this time?

A    Yes briefly, or would it be preferred that I submit it in
     writing?

INSPECTOR:

     Well, the privilege is yours.  If you wish to submit an af-
     fidavit or other evidence, I will allow a period of ten days
     to do so if this is agreeable.

MR. KWAN:

     This is agreeable.

INSPECTOR (FOR THE RECORD):

     The hearing is closed.

- 12 -                              S. F L

Sworn Statement of Siu Fung Luk - File No. A 15 270 763
In the case of:  Same                              October 23, 1967

CERTIFIED a true and correct transcription
of my stenographic notes which are contained
in Service File No. A 15 270 763.

Margaret P. McMonigle
USINS Stenographer

- 13 -                    S. F. L

I have read (or have had read to me) the foregoing statement, consisting of .....13.........pages. I state that the answers made therein by me are true and correct to the best of my knowledge and belief and that this statement is a full, true, and correct record of my interrogation on the date indicated by the above-named officer of the Immigration and Naturalization Service. I have initialed each page of this statement (and the correction(s) noted on page(s) ......5..............).

Signature ..... *Siu feng Luk* .....

Subscribed and sworn to before me at ..300 N. Los Angeles St., Los Angeles, California ......on.....................................

.....*Michael R. Terle, Immigrant Inspector*.....
Officer, United States Immigration and Naturalization Service

Witnessed by: ...........................................

I HEREBY CERTIFY that I have truthfully and correctly translated from English into Chinese (Mandarin dialect) and from Chinese into English.

RECORD OF SWORN STATEMENT
- 14 -

.....................................
Official Interpreter

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service
Form I-263A (Rev. 11-20-63)

To Whom It May Concern:

Mr. Siu Fung Luk was in the loyal Nationalist army during the time of the last Sino-Japanese conflict. He was engaged in underground activities against the Chinese Communists as well as the Japanese. In 1945, he was transfered to the Shanghai area to continue his activities. When the Chinese Communists occpied Shanghai, they wanted his capture but he disguiped himself and managed to escape into Hongkong. However, his life was still threatened by the presence of the Communist underground in Hongkong. He thus joined the merchant marine to come to the U. S. with only the purpose of escaping from the threat against his life. At that time, my late husband Yu Chen Fong was the Branch Chief for the Shanghai branch of the Central News Agency (Nationalist) as well as Regional Director of seven southeastern provinces for the Ministry of Information. All intelligence, propaganda, and underground anti-communist activities were coordinated through my late husband. I had come to know Mr. Luk through working with my husband. I would like therefore to testify on his behalf.

Mrs. I. Tao Fong

Subscribed and sworn to before me
this 20th day of October, 1967

Notary Public in and for the
County of Los Angeles, State
of California
ANTONIA LUISA MOTTLEY
My Commission Expires March 25, 1969.

OFFICIAL SEAL
ANTONIA LUISA MOTTLEY
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY

Exh "A"

EXHIBIT "A"

A15 270 763  LOS - SS 10-23-67

Exhibit Identification Form G 166-B (1 1-54)

FPI-LPC-K-66-20M-231

UNITED STATES DEPARTMENT OF JUSTICE

IMMIGRATION AND NATURALIZATION SERVICE

20 West Broadway

New York, N.Y. 10007      File No. A15 270 763 DB

Date:      9/27/63

### CERTIFICATE OF IDENTITY

To facilitate transportation to    HONG KONG

of applicant whose photograph appears below.

NAME:    LUK, SIU FUNG

DATE & PLACE OF BIRTH:      10/10/24, Wu Hsi District, Kiangsu, China

NATIONALITY:  China                          SEX:  Male

OCCUPATION OR   Crewman (Cook)                MARITAL STATUS:
PROFESSION:
                                                            Married

PRESENT ADDRESS:  1421 No. Hudson Ave., Los Angeles, Calif.

PURPOSE OF JOURNEY:    For travel to      HONG KONG          .
A national passport or any form of travel
document cannot be obtained for travel to
that country.

PERSONAL DESCRIPTION

Height:  5'6"

Weight:  150

Color of hair:  Black

Color of eyes:   Brown

Identification marks:

---

For the U.S. Immigration and
Naturalization Service

*Supr. Imm. Insp.*

Form I-269
(6-16-58)

Exh B

EXHIBIT   "B"

A15 270 763   LOS - SS 10-23-67

Exhibit Identification Form G 166-B (11 1-54)       FPI-LPC-2-66-20M-2318

AFFIDAVIT

OF

SIU FUNG LUK

STATE OF CALIFORNIA    )
                       )  ss.
COUNTY OF LOS ANGELES  )

I, SIU FUNG LUK, being first duly sworn depose and say:

That I am a citizen of the Republic of China and that I was born October 10, 1924 at Wu Shih, Kiangsu, China, and I resided at such place until 1945. During that period of time I was engaged in the underground movement and assisted the Nationalist Government of China during World War II.

Thereafter from 1945 to 1950, while residing at Shanghai, China, I was in activities opposed to Communism. I was a representative of the underground movement in opposition to the Communist Government and at all times was anti-communist. I was informed by my friends that the Communist Government and the officials wanted to arrest me and to throw me in jail or kill me. Accordingly, I fled from Communist China into Hong Kong in 1950, and I have been away from Communist CHina since that time.

That I have been informed and believe that if deported from the United States into Communist China either directly or indirectly, I would be subject to physical persecution and incarceration in custody because of my political opinions and my support for the Republic of China.

That I know of many individuals who have fled the Republic of China into Hong Kong only to be pushed back or deported to Mainland China.

That I execute this Affidavit in request of a Stay of Deportation pursuant to Section 243H of the Immigration

HIRAM W. KWAN
ATTORNEY AT LAW
011 NORTH BROADWAY
OS ANGELES 12, CALIF.
CAPITOL 2-0236

-1-

and Nationality Act for asylum in the United States.

That the situation in my former home in China is such that there is great fear and persecution of citizens and persons similarly placed as myself without cause for mere political opinions. That Hong Kong presently festers with Communist Agents and they have been known to kidnap anti-communists and return such individuals to Communist China for persecution. That daily over fifty (50) bombs are placed into various places in Hong Kong creating a situation of terror.

That I follow the Catholic faith, and am opposed to atheistic Communism, and I would be further persecuted on this ground in addition to being opposed to the Communist ideology.

FURTHER, Affiant sayeth not.

_____Siu Fung Luk_____
Siu Fung Luk

Subscribed and sworn to before me this 30th day of October, 1967.

_____Hiram W. Kwan_____
Hiram W. Kwan, Notary Public

My Commission expires November 25, 1969.

HIRAM W. KWAN
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY

HIRAM W. KWAN
ATTORNEY AT LAW
1011 NORTH BROADWAY
LOS ANGELES 12. CALIF.
CApitol 2-0286